IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE ANDRAKO; MARK BRUCE; JOHN MCCORMICK; on behalf of themselves as individuals and all other similarly situated employees; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS LOCAL UNION 1557, AFL-CIO, CLC; : : : : : : : : : | : | CIVIL ACTION No. 2:07-cv-1629 CHIEF JUDGE DONETTA W. AMBROSE |
| Plaintiffs | : : | |
| vs. | : : | Electronically Filed |
| UNITED STATES STEEL CORPORATION, | : : | |
| Defendant. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FILED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant United States Steel Corporation ("Defendant" or "U. S. Steel"), by and through its undersigned counsel, hereby submits the following well-supported reasons to grant Defendant's Motion to Dismiss the Complaint filed by plaintiffs George Andrako, Mark Bruce, John McCormick, and Local Union 1557 of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO, CLC ("Local 1557") (collectively "Plaintiffs") in the above-captioned matter:

- **First**, the 1947 Portal-to-Portal Act amendments to the Fair Labor Standards Act ("FLSA") expressly invalidated the ability of labor organizations and/or other collective bargaining representatives to bring a representative action under the FLSA on behalf of its members. Therefore, the Court should dismiss Count I as it relates to Plaintiff Local 1557 because it has no standing to bring an FLSA claim.

- **Second,** Plaintiffs' claim for overtime compensation under the FLSA for time spent donning and doffing certain protective clothing, walking to and from the locker room and washing would require this Court to delve into multi-faceted interpretations of the parties' collective bargaining agreements, including the customs and practices established and implemented thereunder, to determine, in the first instance, whether such time

constitutes compensable work.  Such FLSA claims that require interpretation of a collective bargaining agreement must be pursued via the procedures set forth in the Labor Management Relations Act:  grievance, arbitration, and, when permissible, a § 301 suit in federal court.  Plaintiffs have failed to exhaust the grievance and arbitration procedures under the parties' collective bargaining agreement, and, therefore, the Court should dismiss Count I of the Complaint.

- **Third**, with respect to Plaintiffs' Pennsylvania Wage Payment and Collection Law ("PWPCL") claim, such claim is based upon the rights afforded to Plaintiffs by a collective bargaining agreement.  Pennsylvania state and federal courts are in accord that, because the PWPCL creates no substantive right to compensation, when a claim under the PWPCL is based on an underlying collective bargaining agreement, such claim is completely pre-empted by federal labor law.  As a result, the Court should dismiss Count II of the Complaint.

## BACKGROUND

Plaintiffs[1] filed this collective action both individually and allegedly on behalf of all individuals who perform production and maintenance work at U. S. Steel's Clairton, Pennsylvania manufacturing plant, alleging violations of the FLSA § 216(b), and the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. § 260.1 et seq.  U. S. Steel's Clairton plant manufactures coke, which is a primary ingredient in the steel manufacturing process.  Complaint at ¶ 10.  Plaintiffs Andrako, Bruce, and McCormick allege that they have been employed by U. S. Steel at its Clairton manufacturing plant for in excess of three years.  Complaint at ¶¶ 1-3, 25.  Local 1557 is a labor organization, with offices located at 332 State Street, Clairton, Pennsylvania, 15025.  Complaint at ¶ 4.

U. S. Steel and the United Steelworkers of America, AFL-CIO, CLC (the "Steelworkers International Union") are parties to the collectively bargained Basic Labor Agreement ("BLA"),

---

[1] Plaintiffs, throughout the Complaint, fail to distinguish between plaintiffs Andrako, Bruce, and McCormick as individuals and plaintiff Local 1557 as a labor organization.  Although, for ease of reference, this Memorandum of Law generally refers to all plaintiffs collectively as "Plaintiffs," Defendant U. S. Steel submits, and discusses more fully herein, that the distinction between the individual plaintiffs and plaintiff Local 1557 is of important legal significance with respect to Local 1557's lack of standing to bring the FLSA claim.

effective May 1, 2003 through September 1, 2008, attached hereto as Exhibit A.[2]  Pursuant to the BLA, Defendant U. S. Steel recognizes the Steelworkers International Union "as the exclusive representative of a bargaining unit made up of individuals occupying production, maintenance, and hourly rated clerical jobs in the [Defendant's] facilities covered" by the BLA.  BLA at page 8, Art. 2 § A.  The BLA covers fourteen U. S. Steel plants, including the U. S. Steel facility in Clairton.  BLA at page 219, Appendix M.

The BLA contains a number of provisions that are pertinent to the claims brought by the Plaintiffs:

- The BLA provides for a regular workday of eight (8) consecutive hours of work, and a regular workweek of five (5) consecutive workdays in a seven (7) consecutive day period (i.e. forty (40) hours per week).  BLA at pages 65-66, Art. 5 § C.1.

- The BLA further provides for overtime wages, at the rate of one-and-one-half times the Regular Rate of Pay (defined in the BLA), for (a) hours worked in excess of eight (8) hours in a workday; hours worked in excess of forty (40) hours in a payroll week; hours worked on a second reporting in the same workday where the Employee has been recalled or required to work after working eight (8) hours; and hours worked on the sixth or seventh workday of a seven (7)-

---

[2] Plaintiffs allege that Local 1557 and U. S. Steel are parties to a collective bargaining agreement dated May 1, 2003, expiring on September 1, 2008.  Complaint at ¶ 12.  Plaintiffs have failed to attach this collective bargaining agreement to the Complaint.  U. S. Steel is a party with the United Steelworkers International Union to the collectively bargained Basic Labor Agreement, attached to the underlying motion at Tab A, which has the same term (May 1, 2003 – September 1, 2008) as the agreement referenced in the Complaint at paragraph 12, and covers production and maintenance employees at U. S. Steel's Clairton manufacturing plant.  BLA at page 8, Art. 2 § A.1.  Although Plaintiffs failed to attach the BLA to their Complaint, this Court may consider the BLA when deciding this motion to dismiss because Plaintiffs' claims directly implicate and are, without doubt, based upon the BLA.  Complaint at ¶¶ 12-13.  See Pension Benefit Guaranty Corp. v. White Consol. Ind., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document …."); Laughard v. Frye, Civ. Action No. 3:07-60, 2007 WL 30072050, at *2 (W.D. Pa. Oct. 19, 2007) (same).  As the Third Circuit Court of Appeals has explained, if courts were not to consider documents upon which a plaintiff relies but fails to attach to his or her complaint, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  White, 998 F.2d at 1196.

> consecutive day period during which the first five (5) days were worked, whether or not all such days fall within a single payroll week.  BLA at pages 69-70, Art. 5 § D.1-2.

- The BLA acknowledges the force and effect of local agreements, customs and practices, specifically defining "Local Working Conditions" as "specific practices or customs which reflect detailed applications of matters within the scope of wages, hours of work or other conditions of employment, including local agreements, written or oral, on such matters."  BLA at page 62, Art. 5 § A.1.

- The BLA further states "[i]n no case shall Local Working Conditions deprive an Employee of rights under this Agreement, and the conditions shall be changed or eliminated to provide the benefits established by this Agreement."  BLA at page 62, Art. 5 § A.2.

- The BLA contains a provision for the adjustment of grievances, which covers "any differences … between the Company and the Union as to the interpretation or application of, or compliance with, the provisions of this or any other Agreement between the Company and the Union."  BLA at pages 81-99, Art. 5 § I.  The Adjustment of Grievances provision contains a three step grievance procedure that culminates in arbitration.  Id.

Plaintiffs, themselves, allege that employees "are paid hourly wages pursuant to the [BLA]" and that they are not exempt from the wage and hour requirements of either the FLSA or the PWPCL.  Complaint at ¶ 13.  Moreover, Plaintiffs also acknowledge that, even though they are required to don and doff protective clothing as a condition of employment, there exists a custom and practice at Clairton that production and maintenance employees are not compensated for time spent donning and doffing certain required "clothing" at the beginning and end of each work day.  Complaint at ¶¶ 15-27 (emphasis added).  In addition, Plaintiffs allege that they are not compensated for time spent walking to and from the locker room to their workstations, and to and from the locker room to the exit gate.  Complaint at ¶¶ 22-23.  Plaintiffs themselves further acknowledge that they are covered by the BLA, and allege that Local 1557 is the designated collective bargaining representative for the production and maintenance workers on whose behalf the case is filed, and that pursuant to the BLA, Local 1557 has demanded that U. S. Steel

- 4 -

PII-1172524v1

compensate Plaintiffs for the donning, doffing, and walking time at issue.  Complaint at ¶¶ 4, 12, 28.[3]

The alleged uncompensated time about which Plaintiffs complain results from, as they allege, the very conditions of their employment as prescribed by and governed by the BLA and the local agreements, customs, and practices established and implemented at Clairton.  Complaint at ¶¶ 26, 30, 32.

According to the Complaint, the clothing Plaintiffs are required to put on and take off includes (a) flame retardant greens; (b) insulated full-length underwear and socks; (c) flame retardant wristlets and gloves; (d) safety goggles; (e) respirators; (f) ear plugs; (g) snoods; (h) metatarsal boots; (i) face shields; and (j) helmets.  Complaint at ¶ 18.  Meanwhile, the BLA provides that U. S. Steel will furnish, without cost to the Employee, effective protective clothing, including, but not limited to "goggles, hard hats, safety glasses, hearing protectors, face shields, respirators, special purpose gloves, protective clothing and harnesses."  BLA at page 46, Art. 3 § D.  Plaintiffs allege that due to Defendant U. S. Steel's failure to compensate Plaintiffs for such time spent changing clothes, washing, and walking to and from the locker room, Plaintiffs have worked in excess of forty (40) hours per week without overtime compensation.  Complaint at ¶ 29.

## ARGUMENT

### 1. Standard for Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)

The United States Supreme Court recently has explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

---

[3] Plaintiffs' allegation that Local 1557 is the designated collective bargaining agent is refuted by the BLA, which expressly states that the Steelworkers International Union is the exclusive bargaining representative of Clairton production and maintenance employees.  BLA at page 8, Art. 2, § A.  The Steelworkers International Union is not a party to this action.

plaintiff's obligation to provide the grounds of his entitlement of relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted).  Further, while it is true that in the context of a motion to dismiss, "all factual allegations, and all reasonable inferences there from, must be accepted as true and viewed in a light most favorable to the plaintiff[,]" Ideal Aerosmith, Inc. v. Acutronic USA, Inc., Civ. Action No. 07-1029, 2007 WL 4394447, at *1 (W.D. Pa. Dec. 13, 2007) (Ambrose, J.) (citing Haspel v. State Farm Mut. Auto. Ins. Co., No. 06-3716, 2007 WL 2030272, at *1 (3d Cir. July 16, 2007) (unpublished opinion)), a plaintiff's "[f]actual allegations must be enough to raise the right to relief above the speculative level."  Twombly, 127 S.Ct. at 1965; see also Acutronic, 2007 WL 4394447, at *1; Skowronek v. Borough of Avonmore, Civ. Action No. 07-689, 2007 WL 2597930, at *1 (W.D. Pa. Sept. 5, 2007) (Ambrose, J.) (same).  That is to say, "[i]n order to survive a motion to dismiss, the complaint must 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'"  Acutronic, 2007 WL 4394447, at *1 (quoting Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1969 (2007)); Skowronek, 2007 WL 2597930, at *1 (same).

### 2. Plaintiffs' FLSA Claims Should be Dismissed

#### A. Local 1557, as a Labor Organization, Lacks Standing to Bring an FLSA Claim

Although Local 1557 purports to state a claim at Count I of the Complaint against U. S. Steel for alleged violations of the FLSA, a labor union or other collective bargaining representative does not have standing to enforce the FLSA rights of its members.  EEOC v. Am. Telephone and Telegraph Co., 365 F.Supp. 1105, 1120-21 (E.D. Pa. 1973) ("[I]t is well settled and beyond doubt that a labor organization lacks standing to enforce the Section 206 rights of its

members …."), aff'd in part and dismissed in part on other grounds by 506 F.2d 735 (3d Cir. 1974); see also United Food & Comm'l Workers Union, Local 1564 of New Mexico v. Albertson's, Inc., 207 F.3d 1193, 1195 (10th Cir. 2000) ("The courts that have considered this issue have generally held that unions lack standing to bring representative suits on behalf of their members under the FLSA.")(collecting cases); Int'l Ass'n of Firefighters, Local 349 v. City of Rome, Georgia, 682 F.Supp. 522, 534 (N.D. Ga. 1988) ("The courts that have addressed this issue have held that pursuant to § 16(b), a union lacks standing to maintain an action as a plaintiff under the FLSA.").

    The FLSA provides in relevant part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).  This provision was added to the FLSA in the amendments known as the Portal-to-Portal Act of 1947 and, by providing that only "any one or more employees" could bring suit, "expressly invalidated" the ability of a labor organization to bring a representative action under the FLSA on behalf of its members and employees. Am. Telephone and Telegraph Co., 365 F.Supp. at 1120-21; see also State of Nevada Employees' Ass'n, Inc. v. Bryan, 916 F.2d 1384, (9th Cir. 1990) ("The Portal-to-Portal amendments barred unions from bringing representative actions for employees who were union members under § 16(b)."). It is clear that Local 1557, as a labor organization, has no standing to bring FLSA claims on behalf of its members and, therefore, there is no set of facts that could be proved by Plaintiff Local 1557 to entitle it to relief under these claims. This Court should dismiss Local 1557's FLSA claim in Count I of the Complaint.

### B. Plaintiffs' FLSA Claim Requires an Interpretation of the BLA and, Therefore, is Preempted

Under controlling Third Circuit precedent, Plaintiffs' FLSA claim asserted in Count I should be dismissed in that their claim is preempted under Section 301 of the Labor Management Relations Act. Plaintiffs' FLSA claim would require an interpretation of the applicable collective bargaining agreements, including the BLA, local agreements, customs and practices (which cover and, indeed, define the terms and conditions of Plaintiffs' employment, including regular and overtime wages) and is, therefore, subject to the grievance and arbitration procedures set forth in the BLA. Plaintiffs have failed to exhaust the grievance and arbitration procedures in the BLA, and have not alleged that they did so. An FLSA claim in federal court is not the proper procedure to resolve issues of interpretation of the BLA. Stated alternatively, there is no set of facts that Plaintiffs could prove under which the Court could avoid engaging in an interpretation of the applicable collective bargaining agreements. As a result, Plaintiffs' claims for overtime compensation must, in the first instance, be pursued via the procedures set forth in the Labor Management Relations Act, not by way of an FLSA claim.

Third Circuit law states that FLSA claims "which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the [Labor Management Relations Act], specifically grievance, arbitration, and, when permissible, suit in federal court under section 301." Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990) (affirming the Eastern District of Pennsylvania's grant of defendant-employer's motion for summary judgment on plaintiff's FLSA claims). More recently, a federal district court in the Eastern District of Pennsylvania faced the identical issue in Townsend v. BC Natural Chicken LLC, Civ. Action No. 06-4317, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007) (hereinafter "BC Natural Chicken"), and held as follows:

> [D]etermining whether Plaintiffs' claim that time spent "donning and doffing" represents hours worked is a matter of interpretation of the CBA, requiring the Court to find preemption in accord with Vadino … .

Id. at *5.  In BC Natural Chicken, Judge Baylson just one year ago granted an employer's motion to dismiss in an FLSA donning-and-doffing case on precisely such preemption grounds.  Id.  Judge Baylson further explained that "any decision this Court or any finder of fact may take regarding Plaintiffs' claims under § 7(a) of the FLSA requires the Court to also interpret the CBA … Vadino requires the Court to interpret the CBA under the [Labor Management Relations Act.]  However, Plaintiffs have not made any allegations pursuant to [that Act] in their Complaint.  As in Vadino, we will dismiss Plaintiffs' FLSA claim."  Id. at *4.

Here, it cannot be disputed that Plaintiffs' FLSA claim would require this Court to interpret the parties' collective bargaining agreements at multiple levels.  For example, but without limitation:

- **First,** at the simplest level, Plaintiffs' claim would require the Court to interpret the BLA so as to determine whether the acts of donning, doffing, walking and washing constitute "hours of work" as defined in the BLA at Art. 5 § C.1.  BLA at pages 65-66.  Certainly, such a determination would require an interpretation of the BLA, particularly here, where the BLA is silent as to donning, doffing, walking and washing.  Such an interpretation of a collective bargaining agreement is not permitted in the context of an FLSA case.

- **Second**, if such an interpretation of the BLA concluded that some or all acts of donning, doffing, walking and washing do constitute "hours of work" as defined in the BLA, then Plaintiffs' claim would require further interpretation of the BLA to determine whether those "hours of work" result in overtime compensation under Art 5, § D.1-2 and the impact of such hours worked during a shift that may include other noncompensable time.  BLA at pages 69-70.

- **Third**, Plaintiffs' claim would also require the Court to delve beneath the language of the BLA to determine whether any Local Working Conditions (e.g., local agreements, customs and practices) exist.  BLA at Page 62, Art. 5, Section A.

- **Fourth**, if an interpretation of Art. 5 § A of the BLA (Local Working Conditions) concluded that local agreements, customs and practices exist that touch upon donning, doffing, walking and washing, Plaintiffs' claims would require further

> interpretation as to the scope, applicability and ramifications of such Local Working Conditions.

- **Fifth,** if an interpretation of Art. 5 § A of the BLA (Local Working Conditions) concluded that local agreements, customs and practices address the compensability of donning, doffing, walking and washing, Plaintiffs' claims would then require further interpretation so as to determine whether such "Local Working Conditions deprive an Employee of rights under this Agreement." BLA at Page 62, Art. 5, Section A.2.

These examples are not exhaustive of the veritable laundry list of interpretations and cross-interpretations of the BLA and Local Working Conditions that this Court would be required to make in the process of ruling on Plaintiffs' FLSA claims. The requisite interpretations of the parties' collective bargaining agreements is particularly important in the context of the activities at issue here, inasmuch as the FLSA expressly provides that "[i]n determining … the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o).

Third Circuit jurisprudence is clear that no interpretation of the BLA can occur in the context of an FLSA claim. Vadino, 903 F.2d 265-66. Plaintiffs' FLSA claim – which without doubt would have this Court performing multiple interpretations of the BLA – "must be resolved pursuant to the procedures contemplated under the [Labor Management Relations Act], specifically grievance, arbitration, and, when permissible, suit in federal court under section 301." Vadino, 903 F.2d at 266. "Plaintiffs have not made any allegations pursuant to [the Labor Management Relations Act] in their Complaint. [Nor could they since they have not exhausted the grievance and arbitration procedures in the BLA.] As in Vadino, [this Court should] dismiss Plaintiffs' FLSA claim." BC Natural Chicken, 2007 WL 442386, at *4.

- 10 -

### 3. **PWPCL Claims Based on a Collective Bargaining Agreement Are Completely Preempted by Federal Labor Law**

This Court should dismiss Plaintiffs' state law claims under the PWPCL because such claims would require this Court to interpret the BLA and the claims are, therefore, preempted by federal labor law.[4] The United States Supreme Court has explained that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Allis-Chambers Corp. v. Leuck, 471 U.S. 202, 220 (1985); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute."). The obvious rationale behind this rule is to "ensure[] that federal law will be the basis for interpreting collective-bargaining agreement." Lingle, 486 U.S. at 409. Of course, state law is not preempted when "the state-law claim can be resolved without interpreting the [collective bargaining] agreement …." Id. At 410. A logical result of this pre-emption jurisprudence is that

---

[4] Plaintiffs' state law claims also may be pre-empted by the FLSA itself. See Ellis v. Edward D. Jones & Co., L.P., --- F. Supp. 2d ----, 2007 WL 4426615, at *10-12 (W.D. Pa. Dec. 18, 2007). In a discussion of FLSA pre-emption, Judge Gibson of this Court recently observed:

> The terms of the saving clause [in the FLSA] are clear and narrowly drawn ….
> [T]he presence of a limited saving clause should not be read to obviate FLSA's preemptive implications. To the contrary, as saving clause does not bar the ordinary working of conflict pre-emption principles whether the preemption is explicit or implicit. To hold otherwise … would be to permit the law containing the saving clause to defeat its own objectives and perhaps destroy itself …. Indeed, allowing both [] state law and FLSA claims to proceed in the same action would essentially nullify Congress's intent in crafting Section 216(b) [of the FLSA] ….

Id. at *10-11 (internal quotations and citations omitted; emphasis in original).

"state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." Leuck, 471 U.S. at 213.

Both state and federal courts are in accord that the PWPCL does not create any substantive right to compensation beyond that which is afforded by the terms of a collective bargaining agreement or other employment agreement. See BC Natural Chicken, 2007 WL 442386, at *5 (citing Kafando v. Erie Ceramic Arts Co., 764 A.2d 59, 61 (Pa.Super.Ct. 2000) and Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996)). As explained by one Pennsylvania court:

> The underlying purpose of the [P]WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The [P]WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

Kafando, 764 A.2d at 61 (citing Hartman v. Baker, 766 A.2d 347, 352 (Pa.Super.Ct. 2000)). And, indeed, the Third Circuit Court of Appeals "has held that the [PWPCL] 'does not create a right to compensation … [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.'" Antol, 100 F.3d at 1117 (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990)). Because the PWPCL does not create any substantive rights and only provides a statutory procedure by which relief can be granted based upon rights afforded by an underlying contractual agreement, where such agreement is a collective bargaining agreement, courts have held that such claims under the PWPCL are pre-empted by federal labor law. See, e.g., Antol, 100 F.3d at 1121 ("We concluded … that the Pennsylvania Wage Law is preempted by the Labor Management Relations Act and the National

Labor Relations Act."); <u>BC Natural Chicken</u>, 2007 WL 442386, at *5 ("[T]he alleged obligations have been created by a collective bargaining agreement.  Therefore, the [P]WPCL is completely preempted by § 301 of the LMRA."); <u>Local Union No. 98, Int'l Bhd. Of Elec. Workers v. Morris</u>, 2004 WL 1551673, at *3 (E.D. Pa. July 9, 2004) ("Our Court of Appeals has ruled that § 301 of the LMRA completely preempts a [P]WPCL claim … when it is based on a collective bargaining agreement …. The plaintiff's claim under the [P]WPCL is a claim based squarely on a collective bargaining agreement, and therefore it is subject to complete preemption.") (internal quotations and citations omitted).

Here, any obligation on the part of U. S. Steel to compensate Plaintiffs is "based squarely" on the BLA.  <u>Antol</u>, 100 F.3d at 1117.  As discussed above more fully, the BLA provides for the wages – both overtime and regular wages – to be paid by U. S. Steel to Plaintiffs.  The PWPCL does not entitle Plaintiffs to compensation – the BLA does.  Because Plaintiffs' claim to compensation is based upon rights afforded by the BLA and their PWPCL claim is therefore completely pre-empted by federal law, <u>Antol</u>, 100 F.3d 1111, there is no set of facts that could be proved by Plaintiffs to entitle them to relief under Count II of the Complaint.  This Court should, therefore, dismiss Plaintiffs' PWPCL claim in Count II of the Complaint.

## **CONCLUSION**

For the foregoing reasons, Defendant requests that this Court grant Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and dismiss the Complaint in its entirety.

Respectfully submitted,

Dated: February 28, 2008    /s/ James S. Urban
Amy E. Dias, Esq. (Pa. ID 52935)
aedias@jonesday.com
James S. Urban, Esq. (Pa. ID 82019)
jsurban@jonesday.com
    JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA  15219
412-394-7915
412-394-7959 (fax)

J. Michael Jarboe, Esquire (Pa. ID 30741)
jmjarboe@uss.com
Thomas R. Wright, Esquire (Pa. ID 10887)
trwright@uss.com
THE LAW DEPARTMENT OF
UNITED STATES STEEL CORPORATION
600 Grant Street, Suite 1500
Pittsburgh, PA  15219
(412) 433-2832
(412) 433-2811 (fax)

Counsel for Defendant