IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| George Andrako, *et al.*, | ) |  |
|---|---|---|
| Plaintiffs, | ) |  |
| vs. | ) | Civil Action No. 07-1629 |
| United States Steel Corporation, | ) |  |
| Defendant. | ) |  |

AMBROSE, Chief District Judge

# OPINION
## and
# ORDER OF COURT

Plaintiffs have brought this action against their employer under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Stat. Ann. § 260.1, *et seq.,* seeking compensation for time spent donning and doffing (i.e., putting on and taking off) certain protective gear as well as showering and walking to their workstations. Pending before the Court is a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant United States Steel Corporation ("US Steel" or "Defendant"). (Docket No. 11). Plaintiffs oppose Defendant's motion. (Docket Nos. 15, 17). After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, the Motion to Dismiss is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiffs George Andrako, Mark Bruce, and John McCormick (the "individual Plaintiffs"), are employees at a Clairton, Pennsylvania coke manufacturing plant owned and operated by Defendant US Steel ("US Steel Clairton"). Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Local Union 1557, AFL-CIO, CLC ("Local 1557"), is a labor organization and the designated collective bargaining representative for the production and maintenance workers at US Steel Clairton.

US Steel employs in excess of one thousand production and maintenance workers at US Steel Clairton. The individual Plaintiffs and other similarly situated employees are paid hourly wages pursuant to a collective bargaining agreement ("CBA") between Local 1557 and US Steel. The manufacturing processes at US Steel Clairton require the employees to be exposed to extreme conditions of heat and cold, to work with specialized equipment, and to work in sanitized environments. All employees are required to don special protective clothing and equipment prior to entering the manufacturing facilities. Such clothing and equipment can be donned only after the employees enter the gate to the grounds of US Steel Clairton. Immediately upon entering the gate of US Steel Clairton, the employees must swipe an identification card, which records the time of their entrance onto the grounds. After they swipe their cards, the employees then proceed to a locker room in order to don the required clothing and equipment prior to entering the manufacturing areas.[2] Following the donning of this clothing and equipment, the employees walk to their workstations within the manufacturing facility. After completing their production work, the

---

[1] Unless otherwise noted, the facts in this section are taken from Plaintiffs' Complaint.

[2] Among the gear that employees are required to wear are: flame retardant greens; insulated full-length underwear and socks; flame retardant wristlets and gloves; safety goggles; respirators; ear plugs; snoods; metatarsal boots; face shields; and helmets.

employees are then required to return to the locker room facility, where they doff their clothing and equipment. Some employees also are required to shower prior to putting on their street clothes. The employees then leave the facility by the entrance gate, where they swipe their identification cards, which record the time of their exit from the grounds.

Plaintiffs allege that the clothing, gear, and equipment at issue is necessitated by important health and safety risks associated with the manufacturing activities at US Steel Clairton, and that the donning, doffing, and distribution of such clothing, gear, and equipment is an integral and indispensable part of the principal activities for which Plaintiffs are employed. Plaintiffs further allege that they, and other similarly situated employees, are not compensated for the time spent donning their clothing and equipment and traveling from the locker room to their work stations within the manufacturing plant. Plaintiffs, and other employees, also are not compensated for the time spent doffing their clothing and equipment and traveling from the locker room to the exit gate. Plaintiffs aver that, through Local 1557, they have demanded that US Steel compensate them for all of the time required to don and doff their protective gear, and for the walking time required to travel to the production stations, but that US Steel has refused to do so. Plaintiffs also contend that by virtue of Defendant's failure to compensate them for donning, doffing, and walking time, they have worked in excess of 40 hours per week, but have not been compensated for such overtime.

### B. Procedural History

On or about November 30, 2007, Plaintiffs filed a Complaint against Defendant on behalf of themselves and all other similarly situated employees at the US Steel Clairton manufacturing plant. (Docket No. 1). Plaintiffs' Complaint sets forth two counts against Defendant, alleging violations of the FLSA and the PWPCL. Plaintiffs assert their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). Defendant filed a motion to dismiss Plaintiffs' Complaint in its entirety for failure to state a claim against it and brief in support. (Docket Nos. 11, 12). Plaintiffs filed a response and brief in opposition to Defendant's motion. (Docket Nos. 15, 17). Defendant

filed a reply brief with leave of court. (Docket No. 20). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. Standard of Review

In ruling on a 12(b)(6) motion for failure to state a claim, I must look to whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007); see also Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008) (analyzing Twombly); Wilkerson v. New Media Tech. Charter Sch. Inc., __ F.3d __ (3d Cir. 2008) ("The allegations of the complaint . . . should 'plausibly suggest' that the pleader is entitled to relief."). In so doing, I must accept all factual allegations, and all reasonable inferences therefrom, as true and view them in the light most favorable to the plaintiff. Phillips, 515 F.3d at 231. Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65; Phillips, 515 F.3d at 231. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (internal citations omitted). In short:

> "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965) (alteration in original).

When ruling upon a 12(b)(6) motion, I generally may consider only the allegations contained

4

in the complaint, exhibits attached to the complaint, matters of public record, and items appearing in the record of the case. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1195 (3d Cir. 1993). I also may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Id. at 1196.[3] Other matters outside the pleadings should not be considered.

With this standard in mind, I turn now to the issues of this case.

B. **Motion to Dismiss**

1. **FLSA Claim- Local 1557**

Defendant's first argument is that its Motion to Dismiss Plaintiffs' FLSA claim should be granted as to Plaintiff Local 1557 because Local 1557 has no standing to bring an FLSA claim. Specifically, Defendant contends that the 1947 Portal-to-Portal Act amendments to the FLSA expressly invalidated the ability of labor organizations and/or other collective bargaining representatives to bring a representative action under the FLSA on behalf of its members. See Def.'s Mem. in Supp. (Docket No. 12) at 1, 6-7. Plaintiffs do not contest this argument. Rather, Plaintiffs state that they intended Local 1557 to be a party solely for purposes of Count II of the Complaint, Plaintiffs' PWPCL claim. See Pls.' Br. Opp. (Docket No. 17) at 1 n.1. Accordingly, this portion of Defendant's Motion to Dismiss is granted.

2. **FLSA Claim - Individual Plaintiffs**

Whether "donning and doffing" protective clothing is compensable work under the FLSA has been the subject of considerable litigation. Relevantly, the Supreme Court has held that activities such as the donning and doffing of specialized protective gear that are performed either before or

---

[3] In this case, Defendant has attached the parties' CBA as an exhibit to its Motion to Dismiss. (Docket No. 11, Ex. A). Although Plaintiffs deny that their claims are based on the CBA, they have not objected to my consideration of the CBA in deciding the instant motion.

after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the FLSA if those activities are "integral and indispensable" to the principal activities for which the workers are employed . IBP, Inc. v. Alvarez, 546 U.S. 21, 29-30 (2005) (summarizing Steiner v. Mitchell, 350 U.S. 247 (1956)); see also DeAsencio v. Tyson Foods, Inc., 500 F.3d 361, 363 (3d Cir. 2007) (considering appeal on donning and doffing claim and noting that "[t]his is an issue that has created considerable interest"). Taking the allegations in the Complaint as true and viewing them in the light most favorable to Plaintiffs, Plaintiffs FLSA claim seeks compensation for just such activities.

Despite the fact that Plaintiffs' Complaint on its face appears to state an FLSA "donning and doffing" claim upon which relief may be granted under federal notice pleading standards, Defendant argues that the collective bargaining agreement ("CBA") in this case changes this result. Specifically, Defendant contends that the FLSA claim must be dismissed because Plaintiffs have not exhausted the grievance and arbitration procedures under the CBA. Defendant argues that Plaintiffs' FLSA claim requires interpretation of the CBA and, therefore, under Third Circuit case law, must be pursued via the procedures set forth in the Labor Management Relations Act, i.e., grievance, arbitration, and, when permissible, a section 301 suit in federal court. I disagree with Defendant that a 12(b)(6) dismissal on this basis is appropriate.

As an initial matter, the Supreme Court in Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981), made clear that employees' statutory rights to a minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargaining agreement. See id. at 745 (FLSA rights "devolve on petitioners as individual workers, not as members of a collective organization."). In holding that an employee may bring an FLSA claim in federal court after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to his union's collective bargaining agreement, the Supreme Court explained:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

Id. at 745-46 (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-50 (1974)). Although the employees in Barrentine had grieved their wage claim under the collective bargaining agreement prior to bringing their federal FLSA lawsuit, the Supreme Court did not hold that filing such a grievance was a prerequisite to an FLSA claim in federal court. To the contrary, the Court stated that the FLSA's "enforcement scheme grants individual employees broad access to the courts . . . . No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute." Id. at 740. Thus, under Barrentine, there is no *per se* requirement that a union employee proceed through a collectively-bargained grievance and arbitration process prior to, or *in lieu of*, bringing a statutory claim for wages under the FLSA. See, e.g., Albertson's, Inc. v. United Food & Commercial Workers Union, 157 F.3d 758, 761-62 (9th Cir. 1998).

Defendant's reliance on the Court of Appeals for the Third Circuit's decision in Vadino v. A. Valey Engineers, 903 F.2d 253 (1990), for the proposition that Plaintiffs' FLSA claims require interpretation of the CBA and, therefore, must first be pursued via grievance and arbitration even under Barrentine is misplaced. The plaintiff in Vadino brought a section 301 claim against his employer under the LMRA alleging that the employer breached the applicable CBA by paying him less than that provided in the agreement and that the union failed to process the employee's grievance against the employer.[4] The plaintiff also brought a corresponding FLSA claim arguing

---

[4] Specifically, the employee alleged he was entitled to receive a journeyman's rate of pay under the terms of the agreement but that the employer paid him a lesser rate. The court upheld the trial court's dismissal of the LMRA claim as untimely and seemed especially concerned that the plaintiff was trying to circumvent this result by repackaging his LMRA claim as an FLSA claim. Vadino, 903 F.2d at 266.

that the alleged underpayments in his regular rate of pay resulted in underpayments of overtime under the statute. Vadino, 903 F.2d at 255. Affirming the district court's order granting summary judgment in favor of the employer on the plaintiff's FLSA claim, the court of appeals held that Barrentine does not permit union-represented employees to proceed directly to federal court with an FLSA claim where the claim rests on an interpretation of a disputed provision of the underlying collective bargaining agreement. Id. at 266. Because section 7(a) of the FLSA does not provide a means for adjudicating disputes under a collective bargaining agreement, such disputes must first be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible a section 301 lawsuit. Vadino, 903 F.2d at 266-67.

The instant case, however, is easily distinguishable from Vadino. In addition to the fact that Vadino was not a donning and doffing case, Vadino's entitlement to the wage at issue depended on the resolution of a specific dispute as to the correct wage rate under the applicable collective bargaining agreement – a dispute that the plaintiff himself had raised in his corresponding LMRA claim. Here, in contrast, Plaintiffs do not suggest anywhere in the Complaint that they are disputing any provision of the CBA.[5] Rather, the Complaint focuses solely on Plaintiffs' alleged statutory right to compensation.

Defendant's generic arguments that Plaintiffs' FLSA claim will require the court "to delve into multi-faceted interpretations of the parties' collective bargaining agreements, including the customs and practices established and implemented thereunder, to determine, in the first instance, whether such time constitutes compensable work," do not mandate a 12(b)(6) dismissal. See Docket No. 12, at 1-2, 8-10. As set forth above, Plaintiffs are not claiming in their Complaint that their donning and doffing time is compensable work under the CBA. Rather, their argument is that such time is compensable work under the FLSA irrespective of what the CBA provides. This is a

---

[5] Indeed, all parties agree that the CBA is silent as to compensation for donning and doffing time.

question of statutory, not contractual, interpretation. Because, viewing the Complaint in the light most favorable to Plaintiff, the FLSA claim is not dependent on the interpretation of a disputed provision of the CBA, it would be improper for me to dismiss the FLSA claim on that basis at this stage of the proceedings.[6]

Defendant's reliance on the case of Townsend v. BC Natural Chicken LLC, Civil Action No. 06-4317, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007), in support of dismissal is likewise misplaced. As an initial matter, Townsend is an unreported decision out of the Eastern District of Pennsylvania and, as such, is not binding precedent. Moreover, and in any event, Townsend is easily distinguishable from the facts as alleged in the Complaint in this case. Although the court in Townsend, citing Vadino, dismissed a donning and doffing claim as preempted by federal labor law, the applicable collective bargaining agreement in that case expressly provided for twelve minutes pay per week to provide for wash up time. Id. at *5. The court concluded that resolution of the donning and doffing claim would require an interpretation of that provision. As set forth above, there is no such express provision in this case.

Finally, the potential applicability of the exclusion set forth in section 203(o) of the FLSA does not require dismissal of Plaintiff's Complaint at this time. Section 203(o) provides that in determining an employee's "hours worked" under the FLSA, "there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). Defendant argues that it will be necessary to interpret the parties' CBA in order to apply this exclusion and, therefore, the parties must go through the CBA's grievance and

---

[6] The fact that the court may need to refer to the CBA in resolving the FLSA claim does not change this result. See Allis-Chambers Corp. v. Lueck, 471 U.S. 202, 220 (1985) ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted."); Baker v. Kingsley, 387 F.3d 649, 657 (7th Cir. 2004).

arbitration procedure before bringing their FLSA claim in federal court. I disagree. Although section 203(o) references collective bargaining agreements, whether or not the donning or doffing at issue constitutes "changing clothes" under 203(o) or whether there is a "custom or practice" under the CBA of excluding such time as hours worked, appear to be matters of statutory as opposed to contractual interpretation. See, e.g., Turner v. City of Philadelphia, 262 F.3d 222, 225-27 (3d Cir. 2001) (analyzing meaning of "custom or practice" under 29 U.S.C. § 203(o)); Anderson v. Cagle's, Inc., 488 F.3d 945, 958-59 (11th Cir. 2007) (same). Moreover, and in any event, the potential applicability of such exceptions, exclusions, or defenses to FLSA liability involves mixed questions of law and fact that are better left for resolution upon a more fully developed record.[7]

In short, assuming the allegations in the Complaint and reasonable inferences therefrom are true, Plaintiffs have alleged more than enough to raise a right to relief above the speculative level on their FLSA claim. See Twombly, 127 S. Ct. at 1965. Even if Plaintiffs' ultimate chances of recovery are unlikely or remote, that is not the test at the motion to dismiss stage. Accordingly, Defendant's 12(b)(6) motion to dismiss the individual Plaintiffs' FLSA claim is denied.

### 3. Plaintiffs' PWPCL Claim

Defendant's final argument is that Plaintiffs' PWPCL claim is preempted by federal labor law and, therefore, must be dismissed. I agree.

As Defendant correctly notes, it is well-settled that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by

---

[7] In further support of its argument that arbitration is required, Defendant points to footnote 19 of the Barrentine decision in which the Supreme Court "assumed without deciding" that a court should defer to a prior arbitral decision construing the relevant portions of the collective bargaining agreement where the plaintiff's claim depends upon application of section 203(o) or certain other exceptions. 450 U.S. at 741 n.19. This argument is unavailing. In addition to the fact that the Supreme Court's comment in note 19 is dicta, the Court assumed only that the court should defer to a prior arbitral decision. It did not state that such a decision was required. Moreover, as set forth above, it is not clear from the face of Plaintiffs' Complaint that application of section 203(o) would require the Court to interpret the collective bargaining agreement in this case. Thus, dismissal on this basis is inappropriate at this stage of the proceedings.

federal labor-contract law." Allis-Chambers, 471 U.S. at 220; see also Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute."). This preemption rule ensures that federal law will be the basis for interpreting collective-bargaining agreements. Lingle, 486 U.S. at 409. In accordance with this preemption doctrine, "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements." Allis-Chambers Corp., 471 U.S. at 213.

Relevant to this case, the PWPCL provides that any employee, group of employees, or labor organization may institute an action for wages payable. 43 Pa. Stat. Ann. § 260.9a(a). Pennsylvania state and federal courts have held, however, that the PWPCL "'does not create a right to compensation . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages.'" Antol v. Esposto, 100 F.3d 1111 (3d Cir. 1996) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990)). As the Pennsylvania Superior Court has explained:

> The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

Kafando v. Erie Ceramic Arts Co., 764 A.2d 59, 61 (Pa. Super. Ct. 2000) (citing Hartman v. Baker, 766 A.2d 347, 352 (Pa. Super. Ct. 2000)). Where the underlying contractual agreement at issue is a collective bargaining agreement, courts have held that federal law preempts a PWPCL claim based on that agreement. See, e.g., Antol, 100 F.3d at 1121 (concluding that "the Pennsylvania

Wage Law is preempted by the Labor Management Relations Act and the National Labor Relations Act."); Local Union No. 98, Int'l Bhd. of Elec. Workers v. Morris, No. Civ. A. 04-1988, 2004 WL 1551673, at *3 (E.D. Pa. July 9, 2004) (noting that "[o]ur Court of Appeals has ruled that § 301 of the LMRA completely preempts a WPCL claim . . . when it is based on a collective bargaining agreement," and dismissing WPCL claim where it was rooted in obligations "created by one or more collective bargaining agreements and not another type of contract under state law").

As set forth above, unlike the PWPCL, the FLSA creates an independent statutory right to compensation. Thus, Plaintiffs' <u>federal</u> claim survives to the extent Plaintiffs, as individuals, seek to enforce this statutory right and not rights rooted in the collective bargaining agreement. To state a PWPCL claim, however, Plaintiffs' claim for wages must be based on an underlying agreement. Here, the only such agreement is the CBA. Under the precedent cited above, such claims are preempted by federal labor law. I recognize that a plaintiff "is permitted to assert legal rights *independent* of [the collective bargaining] agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." Caterpillar, Inc. v. Williams, 482 U.S. 386, 396 (1987). With the exception of the FLSA claim, however, Plaintiffs have not asserted such rights here.

In their response, Plaintiffs do not identify any other governing agreement or cite to any case law holding that they may enforce their independent federal FLSA rights through the PWPCL. Rather, they argue that the PWPCL specifically permits labor organizations such as Local 1557 to bring a claim thereunder and that their "donning and doffing" claim for wages does not require interpretation of the CBA. These arguments are not persuasive. Simply because the state statute permits labor organizations to bring a claim on behalf of represented employees, does not save the statute from federal preemption. Further, even though Plaintiff's WPCL claim may not turn on an interpretation of a disputed provision in the CBA, it is squarely based on the CBA and, therefore, is preempted. To the extent Plaintiffs argue the WPCL claim is not based on the CBA, the claim

fails because, as set forth above, the WPCL does not create an independent substantive right to wages. As Defendant notes in its reply brief, the underlying agreement "either is a collective bargaining agreement (triggering federal labor law preemption) or there is no agreement (requiring dismissal for failure to state a claim)." Docket No. 20 at 4-5.

For all of these reasons, I find that Plaintiffs have failed to state a PWPCL claim upon which relief may be granted and, therefore, Count II of Plaintiffs' Complaint is dismissed.[8]

### III. CONCLUSION

For the foregoing reasons, Defendant's 12(b)(6) Motion to Dismiss (Docket No. 11) is granted in part and denied in part. Plaintiffs' PWPCL claim set forth in Count II of the Complaint and Local 1557's FLSA claim set forth in Count I of the Complaint are dismissed with prejudice. The motion to dismiss the individual Plaintiffs' FLSA claim set forth in Count I of the Complaint is denied. An appropriate Order follows.

---

[8] In light of this ruling, I need not address Defendant's alternative argument (raised in a footnote) that Plaintiffs' WPCL claim is preempted by the FLSA itself.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

George Andrako, *et al.*,  )
              Plaintiffs,  )
    vs.  )  Civil Action No. 07-1629
United States Steel Corporation,  )
              Defendant.  )

AMBROSE, Chief District Judge

## ORDER OF COURT

AND NOW, this  8th  day of May, 2008, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant United States Steel Corporation's Motion to Dismiss (Docket No. 11) is GRANTED in part and DENIED in part as follows:

1. The Motion to Dismiss Count I of the Complaint is GRANTED with prejudice as to Plaintiff Local 1557 and DENIED as to the individual Plaintiffs.

2. The Motion to Dismiss Count II of the Complaint is GRANTED with prejudice as to all Plaintiffs.

Defendant is ordered to respond to the surviving portions of Plaintiff's Complaint in accordance with the Federal Rules of Civil Procedure. A Case Management Conference is set for **Monday, May 19, 2008 at 10:30 a.m.** All counsel shall bring their calendars to the conference for scheduling purposes. The parties should be prepared to discuss settlement.

                                                BY THE COURT:

                                                /s/ Donetta W. Ambrose
                                                Donetta W. Ambrose
                                                Chief U.S. District Judge