IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

George Andrako, *et al.*,                )
                                          )
                    Plaintiffs,           )
                                          )
        vs.                               )        Civil Action No.  07-1629
                                          )
United States Steel Corporation,          )
                                          )
                    Defendant.            )
                                          )

AMBROSE, Chief District Judge

## OPINION
### and
## ORDER OF COURT

Plaintiffs have brought this action against their employer under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, seeking compensation for time spent donning and doffing (i.e., putting on and taking off) certain protective gear as well as showering and walking to and from their workstations after donning and before doffing.  Pending before the Court is a Motion for Summary Judgment filed by Defendant United States Steel Corporation ("U.S. Steel" or "Defendant").  (Docket No. 48).  Plaintiffs oppose Defendant's motion.  (Docket No.57).  After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, the Motion for Summary Judgment is granted in part and denied in part.

## I.  BACKGROUND

### A.  Factual Background

Unless otherwise indicated, the following material facts are undisputed.

Plaintiffs George Andrako, Mark Bruce, and John McCormick (the "named Plaintiffs"), are hourly employees at a Clairton, Pennsylvania coke manufacturing plant owned and operated by Defendant U.S. Steel ("Clairton Coke Plant").  The approximately 1,250 production and

1

maintenance employees at the Clairton Coke Plant, including the named Plaintiffs, are represented by the United Steelworkers of America, AFL-CIO-CLC ("USWA"). The 1,250 USWA-represented production and maintenance employees at the Clairton Coke Plant also are members of USWA Local Union 1557.

For over 70 years, U.S. Steel and the USWA have engaged in collective bargaining regarding wages, hours of work, and other terms and conditions of employment at U.S. Steel's facilities around the country, including at the Clairton Coke Plant. The current collective bargaining agreement, formally titled the <u>Basic Labor Agreement Between U.S. Steel and the USWA</u> ("2008 BLA"), became effective as of September 1, 2008, and was the successor agreement to the Basic Labor Agreement dated May 20, 2003 ("2003 BLA"),[1] which expired according to its terms in September 2008. The 2003 and the 2008 BLAs each set forth the terms and conditions of employment for the production and maintenance workers at all of U.S. Steel's domestic steel producing facilities, including those at the Clairton Coke Plant.

### 1. 1947 Supplemental Agreement and 2008 Letter Agreement

On April 22, 1947, U.S. Steel and the union entered into a national collective bargaining agreement. In a collectively-bargained Supplemental Agreement attached to the Agreement of April 22, 1947, the parties agreed, <u>inter alia</u>, that:

> The Company shall not be obligated to compensate for any travel or walking time or time spent in preparatory and closing activities on the employer's premises which occurs during the term of the Agreement . . . for which compensation is not paid under present practices, it being agreed that because of the conditions prevailing with respect to such activities they are not compensable. . . .

Docket No. 52, Ex. A.6. Provisions of the 1947 Supplemental Agreement regarding compensability of preparatory and closing activities were expressly referenced and continued in every BLA thereafter until the 2003 BLA.

---

[1] A copy of the 2003 BLA is attached as Exhibit A.2 to Defendant's Appendix. (Docket No. 52).

Although the 2003 BLA does not expressly reference the 1947 Supplemental Agreement, it states that "[a] Local Working Condition established prior to May 20, 2003, which would interfere with the workplace restructuring objective set forth [elsewhere in the Agreement] will be eliminated or modified as appropriate. Those Local Working Conditions unaffected by the foregoing will be preserved." Id., Ex. A.2 at 63 (2003 BLA, Section A.6.b.). Appendix I to the 2003 BLA further provides that "[a]ll Other USS Agreements and Other National Agreements are continued in full force and effect unless: a. expressly modified by this LOA; or b. in conflict with the USS-National CBA." Id., Ex. A.2 at 215 (2003 BLA, App'x I).

During collective bargaining in the summer of 2008, U.S. Steel and the USWA entered into a Letter Agreement Regarding FLSA Matters. The Letter Agreement, which is incorporated into and is part of the 2008 BLA, provides in relevant part as follows:

> The Parties [U.S. Steel and the USWA] agreed that starting in 1947, every national collective bargaining agreement or BLA negotiated by the Parties has included an agreement that the Company is not obligated to pay Employees for preparatory or closing activities which occur outside of their scheduled shift or away from their worksite (i.e., so-called "portal-to-portal activities"). Such activities include such things as donning and doffing of protective clothing (including such items as flame-retardant jacket and pants, metatarsal boots, hard hat, safety glasses, ear plugs, and a snood or hood), and washing up.

Docket No. 52, Ex. A.7. The Letter Agreement also contains a new provision regarding wash-up time for certain employees. See id.

## 2. Employees' Pre- and Post-Shift Activities

Upon entering the Clairton Coke Plant, the employees proceed to a locker room where they can change into their work clothes. The Clairton Coke Plant includes numerous "regulated areas" that are subject to regulations set forth by the Occupational Safety & Health Administration ("OSHA"). These regulations establish standards for coke oven emissions and mandate that employees who work in a "regulated area" wear certain protective clothing and maintain certain hygiene practices. Employees who work in a regulated area are provided with two lockers – one

for work clothes and the other for street clothes, pursuant to the Coke Plant Standard regulations set forth at 29 C.F.R. § 1910.1029(l) and (h)(2)(v).

The Company provides protective clothing and equipment to any employee whose job requires that such clothing be worn or to any employee who desires to wear such clothing for his or her own convenience. Although the full complement of protective clothing worn by any individual employee depends on that employee's specific job or assignment, some or all of the following protective clothing is worn by employees: safety glasses; hard hat; boots; "greens" (flame retardant jackets and pants); flame resistant gloves; hearing protection; snoods or hoods; wristlets; and/or respirators. Some of these items such as hearing protection, respirators, wristlets, and gloves, are not donned prior to the start of an employee's shift, but are put on and taken off at the worksite during the employees' paid shifts. None of the required items may be worn outside the facility.

Employees who work in a "regulated area" at the Clairton Coke Plant are required to shower at the end of their shift. In accordance with applicable OSHA regulations, U.S. Steel provides and maintains wash houses and locker rooms for this purpose. Employees at Clairton who do not work in a regulated area are not required to shower at the end of their shift and whether any such employee elects to wash up or shower is the employee's decision and for his or her own convenience.

Named Plaintiffs Andrako and McCormick work in Coke Production on First Unit at Battery B. Named Plaintiff Bruce currently works in the Battery Preservation Department, but worked in Coke Production on Battery B until 2007.[2] Plaintiffs are required to wear protective clothing and equipment while they perform work in regulated areas of the plant.

Plaintiffs agree that U.S. Steel has never compensated them for their time outside their

---

[2] The Coke Production Department is the largest department at the Clairton Coke Plant. In the Coke Production Department, employees produce coke by heating metallurgical coal in ovens in the absence of air at sections of the plant called batteries. Def.'s St. Mat. Facts (Docket No. 49) ¶ 3.

scheduled shifts spent donning, doffing, or walking to/from their job location. Also, with the exception of the prospective modification in the 2008 Letter Agreement, Plaintiffs never have been compensated for time spent showering outside of their scheduled shift. Plaintiffs deny, however, that any such "agreement, custom and practice" is permissible under the FLSA. <u>See</u> Docket No. 56 ¶¶ 30, 32, 42.

### B. <u>Procedural History</u>

On or about November 30, 2007, Plaintiffs filed a Complaint against Defendant on behalf of themselves and all other similarly situated employees at the U.S. Steel Clairton manufacturing plant. (Docket No. 1). The Complaint set forth two counts against Defendant, alleging violations of the FLSA and the Pennsylvania Wage Payment and Collection Law ("PWPCL"). Plaintiffs assert their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). On February 28, 2008, Defendant filed a motion to dismiss the Complaint in its entirety for failure to state a claim. (Docket No. 11). On May 8, 2008, I entered an order dismissing Plaintiff's PWPCL claim but denying the portion of the motion requesting dismissal of the FLSA claim against the named Plaintiffs. (Docket No. 21). On May 22, 2008, Defendant filed an Answer to Plaintiffs' Complaint and Affirmative Defenses. (Docket No. 24). On December 11, 2008, Defendant filed the instant Motion for Summary Judgment on case-dispositive, threshold issues, along with a Brief in Support, Concise Statement of Material Facts, and Appendix of Record Evidence. (Docket Nos. 48-54). On March 4, 2009, after a limited discovery period, Plaintiffs filed a Counterstatement of Material Facts and Brief in Opposition to Defendant's motion. (Docket Nos. 56-57). On March 19, 2009, Defendant filed a Reply Brief and a Reply to Plaintiff's Counterstatement of Material Facts. (Docket Nos. 58, 60). The issues are now ripe for my review.

## II. **LEGAL ANALYSIS**

### A. **Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

## B. Motion for Summary Judgment

The thrust of Plaintiffs' Complaint is that Defendant has violated the FLSA by failing to compensate them for the time outside their scheduled shifts spent donning, doffing, showering, and walking to/from their job location. Plaintiffs also contend that by virtue of Defendant's failure to compensate them for donning, doffing, washing and walking time, they have worked in excess of 40 hours per week, but have not been compensated for such overtime. Defendant has filed this motion for summary judgment on two potentially case-dispositive, threshold issues. Specifically, Defendant argues that Plaintiffs' claims for donning, doffing, and washing are foreclosed by section 203(o) of the FLSA. Defendant further contends that the Portal-to-Portal Act amendment to the FLSA makes non-compensable the time Plaintiffs spend walking to and from their work stations after donning and before doffing. For the reasons set forth below, Defendant's Motion is granted with respect to clothes-changing and washing time and denied with respect to walking time.

## 1. History of the FLSA and the Portal-to-Portal Act

The FLSA governs the maintenance of standard hour and wage practices. 29. U.S.C. §§ 206, 207; see DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 305-06 (3d Cir. 2003). As enacted in 1938, the FLSA "required employers to pay their employees at least a specified hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207." DeAsencio, 342 F.3d at 306; see also IBP, Inc. v. Alvarez, 546 U.S. 21, 25 (2005).

The FLSA does not define the terms "work" or "workweek," and early cases defined those terms broadly. Alvarez, 546 U.S. at 25 (citing cases). In 1946, in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, the Supreme Court expansively "defined 'the statutory workweek' to 'include, all time during which an employee is required to be on the employer's premises, on duty or at a

prescribed workplace,'" including "time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations." Alvarez, 546 U.S. at 25-26 (quoting Anderson, 328 U.S. at 690-91).

In 1947, in response to Anderson and the flood of litigation that ensued, Congress passed the Portal-to-Portal Act amending certain provisions of the FLSA to shield employers from unexpected liability. DeAsencio v. Tyson Foods, Inc., 500 F.3d 361, 367 (3d Cir. 2007) (citing Alvarez, 546 U.S. at 26-28). With respect to post-Portal-to-Portal Act claims, the statute "narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under [the caselaw]: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." Alvarez, 546 U.S. at 27-28 (citing 29 U.S.C. § 254(a)). Other than these express exceptions, "the Portal-to-Portal Act does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" Id. at 28. Relevant Department of Labor regulations promulgated shortly after the Portal-to-Portal Act's enactment also make clear that the Act has no effect on the computation of hours worked "within" the workday. See 29 C.F.R. § 790.6(a), cited in Alvarez, 546 U.S. at 28. The regulations further adopt the "continuous workday rule," which defines the "workday" generally as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b), quoted in Alvarez, 546 U.S. at 29.

In 1949, two years after the Portal-to-Portal Act, Congress again amended the FLSA, adding, inter alia, the provision currently codified at 29 U.S.C. § 203(o). Section 203(o) provides that in determining an employee's "hours worked" for purposes of the FLSA's minimum wage and overtime provisions, "there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-

bargaining agreement applicable to the particular employee."  The bill's sponsor explained that the purpose of the amendment was to "avoid [] another series of incidents which led to the portal-to-portal legislation" and that the amendment would close a "loophole" within the Portal-to-Portal Act. Anderson v. Cagle's, Inc., 488 F.3d 945, 958 (11th Cir. 2007) (citing 95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949) (comments of Rep. Herter)); see also Figas v. Horsehead Corp., Civ. A. No. 06-1344, 2008 WL 4170043, at *5 (W.D. Pa. Sept. 3, 2008) (Cercone, J.).

In Steiner v. Mitchell, decided approximately eight years after Congress enacted the Portal-to-Portal Act, the Supreme Court addressed the question "whether workers in a battery plant had a statutory right to compensation for the 'time incident to changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employers to provide . . . .'" Alvarez, 546 U.S. at 29 (quoting Steiner v. Mitchell, 350 U.S. 247, 248 (1956)).  In concluding that the donning and doffing at issue in Steiner was compensable under the FLSA, the Court agreed that "activities, such as the donning and doffing of specialized protective gear that are 'performed either before or after the regular work shift, on or off the production line, are compensable under the [FLSA] if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)'" of the Portal-to-Portal Act.  Id. (quoting Steiner, 350 U.S. at 256).

In Alvarez, decided five decades after Steiner, the Supreme Court addressed, inter alia, the applicability of the Portal-to-Portal Act to post-donning and pre-doffing walking time.  In finding that the Portal-to-Portal Act did not preclude compensation for such walking time under the facts of the cases before it, the Court reaffirmed its holding in Steiner that when the donning and doffing are integral and indispensable to an employee's principal activities, the donning and doffing themselves become principal activities within the meaning of the FLSA.  Alvarez, 546 U.S. at 33, 37 ("[A]ny

activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act."). Because walking after the employee's first principal activity and before the last principal activity occurs within the continuous workday, the Portal-to-Portal Act does not apply to such walking time, let alone exclude it from FLSA coverage. Id. at 34, 37.

## 2. Time Spent Changing Clothes and Washing

### a. Changing Clothes

It is undisputed that Defendant has never compensated its employees for time spent donning and doffing protective gear before and after their paid shifts. For purposes of this motion, Defendant also does not dispute that absent application of Section 203(o), such time otherwise would be compensable under the FLSA. Accordingly, the primary issue before me with respect to the donning and doffing at issue is whether Section 203(o) excludes such time from compensation.

As set forth above, Section 203(o) provides that in determining the hours for which an employee is employed, "there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). Thus, Section 203(o) applies if two conditions are met: (1) there must be a bona fide collective bargaining agreement that excludes, by its express terms or a custom or practice thereunder, time spent "changing clothes" from measured working time; and (2) the activities at issue must constitute "changing clothes" within the meaning of the statute. See, e.g., Figas, 2008 WL 4170043, at *6; Kassa v. Kerry, Inc., 487 F. Supp. 2d 1063, 1065 (D. Minn. 2007); Sisk v. Sara Lee Corp., 590 F. Supp. 2d 1001, 1005-06 (W.D. Tenn. 2008).

Here, the first of these two elements is easily satisfied. There can be no dispute that U.S. Steel, by the express terms of its bona-fide collective bargaining agreement with the USWA and/or by custom or practice thereunder, has excluded from measured working time the time spent

donning and doffing the protective items at issue.  Plaintiffs agree that it has never been U.S.

Steel's practice to compensate them or other similar employees for such time, and the 2008 Letter

Agreement (which was incorporated into the 2008 BLA) expressly and unambiguously documents

the company and the union's longstanding agreement in this regard.[3]

Plaintiffs argue, however, that Section 203(o) nevertheless does not apply because

Defendant cannot satisfy the second element.  That is, according to Plaintiffs, the items U.S. Steel

requires employees to don and doff are not "clothes" within the meaning of that provision.  For the

reasons set forth below, I disagree.

### (1) Legal Authority Interpreting the Meaning of "Clothes" Under Section 203(o)

Although the application of Section 203(o) to the donning and doffing of protective gear has

been a hot topic in recent litigation, the Court of Appeals for the Third Circuit has not addressed

the issue of what constitutes "changing clothes" under that provision.[4]  The few circuit courts of

appeal that have analyzed the question have reached differing conclusions.  For example, in

Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003), the Court of Appeals for the Ninth Circuit held that

---

[3] In opposition, Plaintiffs argue that no express agreement existed for the duration of the 2003 BLA because the 2003 BLA did not contain the same language providing for non-compensation that existed in previous BLAs dating back to 1947.  Pl. Opp. at 13-16.  Plaintiffs further argue that the 2003 BLA was only in place for four years and that four years is not long enough to establish a custom or practice of non-payment (especially with respect to showering time over which the Union filed grievances during that time period).  See id.  I disagree.  As an initial matter, the Union and the Company state in the 2008 Letter Agreement that it was their express agreement since 1947 that U.S. Steel was not obligated to compensate employees for such time.  Moreover, even if the express terms of the 2003 BLA were silent as to that agreement, it is undisputed that, except as otherwise provided in the 2008 Letter Agreement and BLA, the Company never paid Plaintiffs for such time before, during, or after the 2003 BLA.  There is no evidence that the parties intended the different language in the 2003 BLA to change that longstanding prior practice.

[4] In Turner v. City of Philadelphia, 262 F.3d 222 (3d Cir. 2001), a case involving the donning and doffing of police uniforms, the Court of Appeals for the Third Circuit analyzed the meaning of the phrase "custom or practice under a bona-fide collective bargaining agreement" as used in Section 203(o).  The court did not address whether uniform change time constitutes "changing clothes" under that section.  The Court of Appeals also addressed donning and doffing issues in DeAsencio v. Tyson Foods, Inc., a series of cases involving workers in a chicken processing plant, but did not address 203(o) because there was no collective bargaining agreement at issue in that case.  See DeAsencio, 500 F.3d 361, 373 n.11 (3d Cir. 2007); see also DeAsencio, 342 F.3d 301 (3d Cir. 2003).

specialized protective gear required to be worn by meat production employees – including, <u>inter alia</u>, plastic aprons, Kevlar gloves, and mesh leggings, vests and sleeves – did not fall within the meaning of "clothes" under Section 203(o). In so holding, the court viewed Section 203(o) as an FLSA exemption that must be narrowly construed against the employer. <u>Id.</u> at 905. Applying this narrow construction, the court reasoned that specialized protective gear worn to protect against a hazard is different in kind from typical clothing and does not "plainly and unmistakably" fit within Section 203(o)'s clothing term. <u>Id.</u>[5]

In contrast, the Court of Appeals for the Eleventh Circuit in <u>Anderson v. Cagle's, Inc.</u>, 488 F.3d 945 (11th Cir. 2007), held that protective clothing required to be worn by chicken processing plant employees – including smocks, hair/beard nets, gloves, and hearing protection – "fit squarely within the commonly understood definition of 'clothes' as that term is used in § 203(o)." <u>Id.</u> at 956. Although the <u>Anderson</u> court recognized that "there may be limits to the application of § 203(o) based on the nature and purpose of the garments at issue," it found that the protective items at issue did not implicate any such limits. <u>Id.</u> at 955-56. The court squarely rejected the employees' argument that Section 203(o) does not apply to any protective clothing whatsoever. <u>Id.</u> at 956. The court also rejected the Ninth Circuit's opinion in <u>Alvarez</u> that Section 203(o) must be narrowly construed against the employer, holding that "§ 203(o) is not an exemption under the FLSA but is instead a definition that limits the scope of the FLSA's key minimum wage and maximum hour provisions." <u>Id.</u> at 957; <u>see also</u> <u>Bejil v. Ethicon, Inc.</u>, 269 F.3d 477, 480 n.3 (5th Cir. 2001) (rejecting employees' argument that the sanitary garments at issue – lab coats, dedicated shoes or shoe coverings, and hair or beard coverings – were not "clothes" under § 203(o), and holding that such items "all appear to fall under the [dictionary] definition of 'clothes'").

---

[5]  In 2005, the Supreme Court affirmed a portion of the <u>Alvarez</u> opinion. The meaning of "changing clothes" under 203(o), however, was not an issue before it. <u>See</u> <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21 (2005); <u>Figas</u>, 2008 WL 4170043, at *7 n.10.

The lower courts also are divided on the "clothes" issue, including the district courts within the Third Circuit. For example, in Figas v Horsehead Corp., my colleague Judge Cercone found that protective materials worn by USWA employees working at a zinc processing facility – including flame retardant jackets, pants, and/or coveralls ("Greens"), hard hats, and work shoes – were "clothes" within the meaning of Section 203(o). 2008 WL 4170043, at *12. In reaching his conclusion, Judge Cercone disagreed with the district court for the Middle District of Pennsylvania in In re Cargill Meat Solutions Wage & Hour Litig., No. 3:CV-06-513, 2008 WL 6206795 (M.D. Pa. Apr. 10, 2008), which held that personal protective equipment worn by meat processing employees – including, smocks, hard hats, hairnets, earplugs, steel-toed boots, safety glasses, plastic gloves, rubber gloves, plastic sleeves, and cut resistant gloves – was not clothing under Section 203(o). Unlike Judge Cercone in Figas, the Cargill court adopted the Ninth Circuit's narrow construction of Section 203(o) in Alvarez and found that the items at issue were not "clearly and unmistakably recognized as clothing." 2008 WL 6206795, at *14. Rather, "[s]uch items may be more appropriately defined as safety equipment or gear worn by an employee for protection." Id.[6]

Finally, the Department of Labor ("DOL"), the agency responsible for administering the FLSA, has issued two opinion letters in the past decade advising that clothes "include items worn on the body for covering, protection, or sanitation," for the purpose of applying and enforcing Section 203(o). The DOL issued the first opinion letter on June 6, 2002, and reiterated its view in a letter issued on May 14, 2007. See Fair Labor Standards Act, U.S. Dept. of Labor, Wage & Hour Div., Advisory Op. Ltr. No. FLSA 2002-2 (June 6, 2002) and Advisory Op. Ltr. No. FLSA 2007-10

---

[6] Other district courts addressing the same question also have reached different outcomes. Compare, e.g., Sisk v. Sara Lee Corp., 590 F. Supp. 2d 1001 (W.D. Tenn. 2008), Gatewood v. Koch Foods of Miss., LLC, 569 F. Supp. 2d 687 (S.D. Miss. 2008), Kassa v. Kerry, Inc., 487 F. Supp. 2d 1063 (D. Minn. 2007) (all holding that various protective items were "clothes" under Section 203(o)), with Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860 (W.D. Wis. 2007), Gonzalez v. Farmington Foods, Inc., 296 F. Supp. 2d 912 (N.D. Ill. 2003), Perez v. Mountaire Farms, Inc., Civ. No. AMD 06-121, 2008 WL 2389798 (D. Md. June 10, 2008) (narrowly construing the meaning of "clothes" under 203(o) and holding that certain personal protective gear did not fall within that meaning).

(May 14, 2007). In the 2007 letter, the DOL maintained its position on the meaning of "changing clothes" notwithstanding the intervening contrary opinion of the Court of Appeals for the Ninth Circuit in Alvarez. See id.[7]

### (2) Application of the "Changing Clothes" Provision to Plaintiffs' Case

Here, I find that Defendant easily satisfies the second Section 203(o) element because the articles Plaintiffs don and doff prior to and following their shifts are plainly "clothes" within the meaning of the statute. The FLSA does not define the term "clothes" as it appears in Section 203(o). As the district court in Figas explained, "'[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" Figas, 2008 WL 4170043, at *10 (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). Courts frequently have looked to the dictionary definition of "clothes" to help ascertain the common and ordinary meaning of the word. See, e.g., Anderson, 488 F.3d at 955. Webster's Third International Dictionary, commonly cited by the courts, defines "clothes" as "clothing" which it in turn defines as "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." Webster's Third New International Dictionary 428 (unabridged) (1986); see also Anderson, 488 F.3d at 955; Bejil, 269 F.3d at 480 n.3. I agree that this definition of "clothes" is consistent with the common understanding of the term.[8]

---

[7]  The court of appeals in Alvarez rejected the DOL's 2002 interpretation of "changing clothes" and afforded the opinion letter less deference then ordinarily given to an agency interpretation because it conflicted with the DOL's position in two previous opinion letters issued in 1997 and 2001. Alvarez, 339 F.3d at 905, n.8. I agree with the Eleventh Circuit Court of Appeals in Anderson, however, that "[w]hile less deference may be called for, the most recent advisory opinion is entitled to some deference just the same." 488 F.3d at 956; see also Figas, 2008 WL 4170043, at *12 n.13 ("[I]nconsistency alone does not deprive an agency's policy statements of all persuasive force (citing Fed. Exp. Corp. v. Holowecki, 128 S. Ct. 1147, 1156-57 (2008)). In addition, the Alvarez opinion was issued in 2003, only one year after the 2002 DOL letter which, at the time, was a recent departure from the agency's prior view. Since that time, however, the DOL has issued its second opinion letter, reiterating its 2002 position despite Alvarez and demonstrating consistency on the issue.

[8]  To the extent Defendant argues that the items at issue are "clothes" because U.S. Steel and the Union agree that they are clothes, see Def.'s Motion ¶ 2, such argument is without merit. The meaning of "changing clothes" under Section 203(o) is a matter of statutory, not contractual, interpretation, and neither the Company nor the Union can contract away Plaintiffs' FLSA rights in this regard.

In this case, Defendant has provided in its Appendix photographs and a video depicting the protective gear at issue. See Docket No. 52, Exs. A.3-.5. After reviewing those attachments as well as the other evidence of record and the arguments of the parties, I find that the items depicted – flame retardant jackets and pants ("greens" or "oranges"), glasses, boots, snoods, and hard hats – unquestionably fall within the above or any common definition of the word "clothes." See, e.g., Figas, 2008 WL 4170043, at *11-*12 (finding almost identical items to be clothes under § 203(o)); see also Anderson, 488 F.3d at 956 (smocks, hair/beard nets, gloves, and hearing protection are clothes); Kassa, 487 F. Supp. 2d at 1067 (clothes include pants, shirts, smocks, and boots). Moreover, as the video submitted by Defendant illustrates, the employees remove their street clothes before donning their Greens and other protective gear. Like Judge Cercone in Figas, "[i]t is difficult [for me] to fathom a sequence of events more clearly approximating the meaning of the phrase 'changing clothes.'" Figas, 2008 WL 4170043, at. *11.

In their opposition brief, Plaintiffs argue against a broad definition and urge that I follow the Ninth Circuit Court of Appeals in Alvarez and the district court in In re Cargill, and hold that Section 203(o) is an exemption that must be narrowly construed against Defendant.[9] In so arguing, Plaintiffs do not attempt to draw a line between specialized and general protective clothing. See Anderson, 488 F.3d at 956; Figas, 2008 WL 4170043, at. **11-12. Instead, although Plaintiffs admit that the items at issue do not "appear unusual," they suggest that Section 203(o) should not apply to any apparel or equipment intended for protection and/or required by the employer or the law. Pl. Opp. Br. at 12. This argument is unpersuasive, and to the extent Alvarez and In re Cargill

_____

[9] Proponents of a narrow construction of Section 203(o), including Plaintiffs, often cite to the broad remedial purpose of the FLSA in support of their argument. As the courts in Anderson and Figas point out, however, Section 203(o) was enacted in 1949 as part of a series of amendments designed to curtail what Congress perceived as overly-expansive employee-protective interpretations of the FLSA by the courts. See Anderson, 488 F.3d at 958 (discussing 203(o)'s legislative history); Figas, 2008 WL 4170043, at **8-9 (same). Given this legislative history, it is not at all certain that the FLSA's general broad remedial pro-employee purpose applies to Section 203(o).

stand for such a proposition, I disagree with those holdings. The plain language of 203(o) does not distinguish between "protective" and "non-protective" clothing (although it easily could have done so), and I agree with Judge Cercone in <u>Figas</u> that the protective nature of the clothing does not strip it of its essence. <u>See Figas</u>, 2008 WL 4170043, at *11 ("[T]he adjective 'protective' does not deprive 'clothes' of their fundamental character."); <u>see also Anderson</u>, 488 F.3d at 955 ("[W]e see no need to distinguish uniforms from protective clothes . . . worn in the workplace.").[10]

For all of these reasons, I agree with Defendant that "by description, look, feel, purpose, fit, and basic common sense," the items at issue are "clothes" within any reasonable meaning of Section 203(o). Because the applicable collective bargaining agreements exclude clothes-changing time from hours worked, Defendant's motion for summary judgment is granted as to the portion of Plaintiffs' FLSA claim seeking compensation for such time.

### b. <u>Washing</u>

Plaintiffs do not dispute that the term "washing" as used in 203(o) refers to washing of the person. Plaintiffs argue, however, that I should extend the Ninth Circuit's narrow construction of "changing clothes" under 203(o) to the term "washing" and hold that showering for protective purposes and/or required by law or the employer does not constitute "washing" within the meaning of the Act. Pl. Opp. at 12-13. Plaintiffs do not cite to any authority in support of this argument, and I find that it is without merit.

For the reasons set forth in the immediately preceding section, the mere fact that washing is done for protective purposes and/or is required by the employer or by law does not *per se* render Section 203(o) inapplicable. Moreover, although it is possible to dispute whether certain protective

---

[10] The items at issue in this case also are a far cry from some of the specialized protective equipment such as mesh aprons and plastic arm guards at issue in <u>Alvarez</u>. <u>See Alvarez</u>, 339 F.3d at 898 & n.2. In any event, the DOL and some other courts have held that even such specialized items are clothes within the meaning of Section 203(o). I agree that not every form of protective equipment necessarily falls within the meaning of the term "clothes." <u>See Figas</u>, 2008 WL 4170043, at *10 ("The categories of 'clothes' and 'personal protective equipment' are neither mutually inclusive or mutually exclusive."); <u>Anderson</u>, 488 F.3d at 955. The items at issue here, however, do not test those limits.

items are actually clothes as opposed to other equipment or tools, there is no question that "washing" as contemplated by Section 203(o) includes showering or otherwise washing the body. To read "washing for protective purposes" out of Section 203(o)'s coverage controverts the plain meaning of the term and simply goes too far.

Further, to the extent Plaintiffs cite <u>Steiner</u> for the proposition that Section 203(o) does not cover mandatory showering simply because such showering is integral and indispensable to Plaintiffs' principal activities, such argument is misplaced.  <u>See</u> Pl. Opp. at 13.  <u>Steiner</u> does not stand for the proposition that integral and indispensable activities such as mandatory showering can never fall within the meaning of Section 203(o).  To the contrary, the Supreme Court in <u>Steiner</u> expressly contemplated exactly that scenario.  350 U.S. at 255 (stating that the "clear implication" of Section 203(o) "is that clothes changing and washing, which are otherwise a part of the principal activity, may be expressly excluded from coverage by agreement").  Indeed, it would be unnecessary to apply 203(o) to non-integral and indispensable showering as such time likely would be excludable as preliminary or postliminary under the Portal-to-Portal Act.

Because Section 203(o) precludes Plaintiffs' claim for washing time for all of the above reasons, Defendant's motion for summary judgment is granted on this issue.

### 3.  <u>Post-Donning and Pre-Doffing Walking Time</u>

Defendant argues that the time employees spend walking to and from the actual place where their work is performed (such as a coke battery) after donning and before doffing is, by operation of the plain language of the Portal-to-Portal Act (as well as the agreement between U.S. Steel and the USWA), excluded from compensable working time.  Plaintiffs disagree and argue that the post-donning and pre-doffing walking time occurs within their continuous workday and, therefore, the Portal-to-Portal Act does not apply to such time.

To the extent Defendant argues that the Portal-to-Portal Act precludes compensation for post-donning/pre-doffing walking time regardless of whether the relevant donning and doffing are

principal activities, such argument is foreclosed by the Supreme Court's decision in IBP, Inc. v. Alvarez, 546 U.S. 21 (2005). In Alvarez, the Supreme Court rejected this very argument and held that "[d]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity, is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA." Id. at 37; see also Figas, 2008 WL 4170043, at *16. Thus, Defendant's argument is viable only if the donning and doffing time at issue is not a principal activity within the meaning of the FLSA.[11]

In making this argument, Defendant does not directly contend that the donning, doffing, and showering activities at issue are not "integral and indispensable" to the principal activities for which Plaintiffs are employed.[12] Rather, Defendant argues that because Section 203(o) precludes compensation for Plaintiffs' donning, doffing, and washing activities, such activities cannot be "principal activities" and, therefore, cannot start or end Plaintiffs' continuous workday. The Portal-to-Portal Act would then apply directly to the post-donning and pre-doffing walking time and expressly preclude compensation for that time. This question – whether Section 203(o) renders otherwise principal activities simply non-compensable or both non-compensable and non-principal – is a difficult one and one that has divided the few authorities that have addressed it.

In support of its argument, Defendant relies on the DOL's May 14, 2007 opinion letter (cited

---

[11] I also am unpersuaded by Defendant's argument that I should give great weight to U.S. Steel and the Union's express agreement that post-donning and pre-doffing walking time is noncompensable. As Judge Cercone correctly noted on this point in Figas, "the voluntary nature of a collective bargaining agreement would not cure any legal defect in [Defendant's] failure to compensate its employees for their post-donning and pre-doffing travel time, since rights provided by the FLSA cannot be waived by an agreement between an employer and its employees." 2008 WL 4170043, at *20.

[12] Indeed, the Supreme Court's decision in Steiner likely would preclude such an argument. See Steiner, 350 U.S. at 256 (finding that the time battery plant employees spent showering and donning and doffing employer-provided work clothes was "integral and indispensable" to the principal activity of battery production where the clothes changing and showering was compelled by circumstances, including vital considerations of health and hygiene). The undisputed facts indicate that serious health and safety concerns equal to those at issue in Steiner compel the required clothes-changing and showering at issue in this case.

in the clothes-changing discussion above), in which the Administrator states, without further elaboration, that "[i]n promulgating [Section 3(o)] Congress plainly excluded activities covered by section 3(o) from time that would otherwise be'[h]ours worked.'  Accordingly, activities covered by section 3(o) cannot be considered principal activities and do not start the workday.  Walking time after a principal activity is therefore not compensable unless it is preceded by a principal activity." U.S. Dept. of Lab. FLSA 2007-10, 2007 WL 2066454 (May 14, 2007).  Defendant also cites a 2008 district court decision out of the Western District of Tennessee that relies primarily on the DOL letter to reach the same conclusion.  Sisk v. Sara Lee Corp., 590 F. Supp. 2d 1001, 1011 (W.D. Tenn. 2008).  Plaintiffs, on the other hand, point to Judge Cercone's decision in Figas, which held that "activities rendered noncompensable under § 203(o) by a collective-bargaining agreement can nevertheless mark the *beginning* and the *end* of a continuous workday for purposed of the Portal Act."  Figas, 2008 WL 4170043, at *20.  Plaintiffs also cite to the 2008 decision of the District Court for the Southern District of Mississippi in Gatewood v. Koch Foods of Mississippi, LLC, which likewise held that "[a]lthough the act of 'changing clothes' itself is barred based on § 203(o) . . . , the activities that occur after changing into sanitary gear and before changing out of sanitary gear are not impacted by the defense."  569 F. Supp. 2d 687, 702 (S.D. Miss. 2008).

After careful review of the statute, the case law, and the arguments of the parties, I agree with Plaintiffs, as well as the courts in Gatewood and Figas, that the Portal-to-Portal Act does not preclude compensation for the post-donning/pre-doffing walking time in this case.  Section 203(o) relates to the compensability of time spent donning, doffing, and washing in the collective-bargaining process.  It does not render such time any more or less integral or indispensable to an employee's job.  As the court in Gatewood explained:

> Although the statute precludes recovery for time spent washing and "changing clothes," it does not affect the fact that these activities could be the first "integral and indispensable" act that triggers the start of the continuous workday rule for subsequent activities that are not covered by § 203(o), such as post-donning sanitation and travel time.

569 F. Supp. 2d at 702 n.31. Like the <u>Gatewood</u> court and Judge Cercone in <u>Figas</u>, I am not convinced

> that § 203(o) changes the "principal" nature of donning and doffing activities, or that "principal" activities somehow become "preliminary" or "postliminary" under the Portal Act simply because they are rendered noncompensable by a collective-bargaining agreement in accordance with § 203(o). A determination to the contrary would expand § 203(o)'s exclusion beyond donning, doffing and washing time to include post-donning and pre-doffing travel time, which is not mentioned therein.

<u>Figas</u>, 2008 WL 4170043, at *20.

This reading of Section 203(o) is consistent with the Supreme Court's decision in <u>Alvarez</u>. In <u>Tum v. Barber Foods, Inc.</u>, one of the cases before the Supreme Court in <u>Alvarez</u>, the jury had found that otherwise "integral and indispensable" donning and doffing time was not compensable under the *de minimis* doctrine." <u>See</u> <u>Alvarez</u>, 546 U.S. at 38-39 (explaining <u>Tum</u>'s procedural history); <u>see also</u> <u>Tum v. Barber Foods, Inc.</u>, 360 F.3d 274, 278-79 (1st Cir. 2004), <u>rev'd on other grounds sub nom.</u> <u>Alvarez</u>, 546 U.S. 21; <u>DeAsencio</u>, 500 F.3d at 370 n.9. Notwithstanding this fact, the Supreme Court firmly held that the employees' post-donning and pre-doffing walking time in <u>Tum</u> was part of the continuous workday and, therefore, the Portal-to-Portal Act did not apply to such time. <u>Alvarez</u>, 546 U.S. at 39. Defendant has not advanced any argument as to why *de minimis* activity can be principal but non-compensable while Section 203(o) activity cannot.

For all of these reasons, I agree with Plaintiffs that the post-donning and pre-doffing walking time "is neither preliminary nor postliminary to principal activities, but is part of the workday itself, following [and preceding] the . . . principal activit[ies] of donning[,] doffing," and washing. Pl. Opp. Br. at 18. Accordingly, Defendant's Motion for Summary Judgment on this issue is denied.[13]

### 4. <u>Exhaustion of Administrative Remedies Under the CBA</u>

Finally, Defendant argues that if there is any doubt regarding U.S. Steel's entitlement to

---

[13] I do not make any ruling as to whether the walking time is non-compensable under any other theory, such as the *de minimis* doctrine. Such issues are not currently before me.

summary judgment as to Plaintiffs' walking-time claim, I nevertheless should dismiss that claim because Plaintiffs failed to first seek resolution of that claim through the mandatory grievance and arbitration procedure under the applicable BLA. Def.'s Br. at 18-20. This argument is without merit. As set forth above, Plaintiffs claim for compensation for walking time does not rest on an interpretation of the underlying collective bargaining agreement. Rather, Plaintiffs argue that regardless of what the collective bargaining agreement provides, the FLSA entitles them to compensation for post-donning and pre-doffing walking time as a matter of law. This is a question of statutory, not contractual, interpretation.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 48) is granted with respect to Plaintiffs' FLSA claim seeking compensation for time spent donning, doffing, and showering. Defendant's Motion is denied with respect to Plaintiffs' FLSA claim for post-donning/pre-doffing walking time. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

George Andrako, *et al.*,           )
                                    )
            Plaintiffs,             )
                                    )
    vs.                             )     Civil Action No. 07-1629
                                    )
United States Steel Corporation,    )
                                    )
            Defendant.              )
                                    )

AMBROSE, Chief District Judge

### ORDER OF COURT

AND NOW, this 22nd day of June, 2009, after careful consideration of the submissions of

the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that

Defendant United States Steel Corporation's Motion for Summary Judgment Filed Pursuant to

Federal Rule of Civil Procedure 56 (Docket No. 48) is granted with respect to Plaintiffs' FLSA claim

for compensation for time spent donning, doffing, and showering at the beginning and end of the

workday. Defendant's Motion is denied in all other respects.

It is further ordered that Plaintiffs may now move to reinstate their Motion to Proceed as a

Collective Action and to Facilitate Notice Under 29 U.S.C. § 216(b), which was administratively

terminated on February 25, 2009 pending resolution of Defendant's Motion for Summary Judgment.

A Case Management/Settlement Conference is set for Tuesday, June 30, 2009 at 10:30

a.m. in Courtroom 3B. All counsel shall bring their calendars to the conference for scheduling

purposes. The parties should be prepared to discuss settlement.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge