IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| George Andrako, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No.  07-1629 |
| ) | |
| United States Steel Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

AMBROSE, Chief District Judge

# **MEMORANDUM ORDER OF COURT**

Plaintiffs brought this action against their employer, Defendant United States Steel Corporation ("U.S. Steel" or "Defendant"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, seeking compensation for time spent donning and doffing (i.e., putting on and taking off) certain protective gear as well as showering and walking to and from their workstations after donning and before doffing.  On June 22, 2009, I issued an order entering partial summary judgment in favor of U.S. Steel, dismissing Plaintiffs' claims for time spent donning, doffing, and showering, but declining to dismiss Plaintiffs' claims for post-donning and pre-doffing walking time. (Docket No. 62).

Now pending before the Court is Plaintiffs' Amended Motion to Proceed as a Collective Action and to Facilitate Notice Under 29 U.S.C. § 216(b) (Docket No. 126), which Plaintiffs filed on August 20, 2009.[1]  In their amended motion, Plaintiffs seek an order authorizing this case to proceed as a Section 216(b) collective action and authorizing notice to the following potential opt-in

---

[1] Plaintiffs filed their original Motion to Proceed as a Collective Action and to Facilitate Notice Under 29 U.S.C. § 216(b) (Docket No. 25) on June 3, 2008.  After an administrative closure, I reinstated the motion on June 29, 2009.  (Docket No. 65).  Defendant filed a brief in opposition to that motion on August 4, 2009 (Docket No. 73) after which I requested that Plaintiffs submit additional information.  See Order of Court dated August 11, 2009.  During a telephone conference on August 17, 2009, I permitted Plaintiffs to file an Amended Motion on or before August 20, 2009.  (Docket No. 78).

plaintiffs whom the Named Plaintiffs contend are similarly situated to them:

> All hourly production and maintenance workers at the Clairton Coke Works, who, at any time since November 30, 2004 were employed in an "OSHA-regulated area," and who walked to and from the production facilities (the Coke plant) to don and doff protective gear and shower.

Pls.' Am. Mot. (Docket No. 126) ¶ 8. Plaintiffs also seek approval of proposed notice and opt-in consent forms; and notice and opt-in consent forms to be sent by Plaintiffs' counsel to potential opt-in plaintiffs by first class U.S. mail. Plaintiffs further request that a proposed fifteen-question Questionnaire be approved for mailing to potential opt-in plaintiffs along with the notice and opt-in consent forms. See Docket No. 126, and Exs. 1-3. Defendant opposes the Amended Motion. (Docket No. 188). After a careful review of the submissions by the parties and for the reasons discussed in this Memorandum Order, Plaintiffs' Motion is granted in part and denied in part.

**I.** **Conditional Certification**

    **A.** **Requirements**

The FLSA mandates employers to pay employees at least the minimum wage for all hours worked. 29 U.S.C. § 201, *et seq*. The FLSA permits employees to maintain a collective action under 29 U.S.C. §216(b) on their own behalf and on behalf of all similarly situated employees. Plaintiffs have petitioned to proceed collectively against Defendant under 29 U.S.C. § 216(b) for compensation for post-donning time spent walking to the production facilities at the beginning of the day and time spent returning to the lockers at the end of the day prior to doffing and showering. In relevant part, Section 216(b) authorizes collective actions against employers:

> by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); Sperling v. Hoffman La-Roche, Inc., 862 F.2d 439, 444 (3d.Cir.1988) (two requirements for §216(b) class action are that employees are similarly situated and each class

member file individual consent to opt-in).

The FLSA does not define the term "similarly situated" and neither the United States Supreme Court nor the Court of Appeals for the Third Circuit provide direct guidance on determining whether potential class members are similarly situated. In the absence of definitive precedent, district courts in the Third Circuit have developed a two-stage test. Kuznyetsov v. West Penn Allegheny Health Sys., No. 09-CV-379, 2009 WL 1515175, at *1 (W.D. Pa. June 1, 2009) (Ambrose, J.). During the initial notice stage, the court determines whether a class should be conditionally certified for the purpose of notice to potential opt-in plaintiffs and for pretrial discovery regarding their individual claims. Id. (citing cases). In so doing, the court preliminarily determines whether the proposed class consists of similarly situated employees. Id. (citing Smith v. Sovereign Bancorp, No. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003)). Courts generally examine the pleadings and affidavits of the parties to decide whether the proposed class members are similarly situated, see Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL 2583563 at *1 (D.N.J. Sept. 7, 2006), and utilize a "fairly lenient" standard in rendering such a determination. Pontius v. Delta Fin. Corp., No. 04-1737, 2005 WL 6103189, at *3 (W.D. Pa. June 24, 2005); see also Kuznyetsov, 2009 WL 1515175, at *1; DeAsencio v. Tyson Foods, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (at first tier, plaintiffs have "fairly low burden" to prove similarly situated requirement). If the plaintiff meets the requisite showing, the class is conditionally certified for the purpose of notice and discovery. Kuznyetsov, 2009 WL 1515175, at *1. Once the class is conditionally certified, notice is given to the potential plaintiffs so that they may elect whether to opt-in to the action. Id.

In the second stage of class certification, after the court is more fully informed through discovery, the defendant may move to decertify the class on the basis that the "similarly situated" standard has not been met and the court makes its final certification decision. Sperling, 826 F.2d at 444; Kuznyetsov, 2009 WL 1515175, at *2; Pontius, 2005 WL 6103189, at *3. The present

matter involves a stage one analysis.

The district courts in this Circuit do not unanimously agree on the appropriate level of proof for a stage one determination that potential class members are similarly situated. Some courts confer conditional certification and notice if a plaintiff advances an allegation that he and the proposed class members were victims of a single employer policy. DeAsencio, 130 F. Supp. 2d at 663; Goldman v. Radio Shack Corp., No. 03-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003). Under this evidentiary approach, preliminary certification is granted upon a mere allegation that the putative class members were injured by a single policy of the defendant employer. Id. (conditional certification requires only lax showing of similarly situated).  Others courts apply a more exacting, yet still relaxed, test requiring the plaintiffs to show a modest factual nexus between their situation and that of the proposed class members. Aquilino, 2006 WL 2583563, at *2; Smith, 2003 WL 22701017, at *2; Armstrong v. Weichert Realtors, No. 05-3120, 2006 WL 1455781, at *2 (D.N.J. May 19, 2006) (conditional certification issue determined under "modest factual showing" standard); Bishop v. AT&T Corp., No. 08-468, 2009 WL 763946, 2-3 (W.D. Pa. March 23, 2009); Dreyer v. Altchem Envt'l Servs., Inc., No. 06-2393, 2006 WL 3676013, at 2 (D.N.J. Dec. 12, 2006) (plaintiffs must show factual nexus between their situation and situations of other employees); Bond v. Nat'l City Bank of Pa., 2006 WL 1744474, 4 (W.D. Pa. June 22, 2006); Smith, 2003 WL 22701017, at 2-3.

In Smith, the district court observed that the mere allegation test contradicted the design of the FLSA's opt-in requirement to limit the size of collective actions, and chose to adopt the modest factual showing approach. Id. at **2-3. This evidentiary standard requires a plaintiff to show "a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.' " Aquilino, 2006 WL 2583563, at *1 (citation omitted). The Smith court described this standard of proof, as a "more stringent-although nonetheless lenient-test that requires the plaintiff to make a 'modest factual

4

showing' that the similarly situated requirement is satisfied." Id. at *2 (citation omitted); see Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001) (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated); Bosley v. Chubb Corp., No. 04CV4598, 2005 WL 1334565, 3 (E.D. Pa. June 3, 2005). I agree with the reasoning of those courts that have required a "modest factual showing" approach. See Kuznyetsov, 2009 WL 1515175, at *2. This approach "enables a court to narrow the potential class from all of a defendant's employees to just those employees who can possibly" have a claim under the same policy as allegedly affected Plaintiffs. Smith, 2003 WL 22701017, at *3; Kuznyetsov, 2009 WL 1515175, at *2.

### B. Affidavits and Company Policies

To support their position, Plaintiffs submit the affidavits of two Named Plaintiffs, George Andrako and John McCormick. (Docket No. 127, Exs. 1, 2; Docket No. 149). Andrako's affidavit asserts that he has been employed by U.S. Steel at the Clairton Coke Works for 36 years and, at all relevant times, has worked on the "B Battery," an OSHA-regulated area. Andrako Aff. (Docket No. 149) ¶¶ 2-3. Andrako further asserts that he is required to don and doff protective gear and shower and that he dons, doffs, and showers at the plant's Maple Avenue locker room facility. Id. ¶¶ 3-4. Andrako further asserts that he walks to the Battery from the locker facility after donning and walks back to the locker room at the end of the production day to change and shower. Id. ¶ 5, 9. Andrako states that his walk between the Battery and the locker room takes approximately 15 minutes each way and that he has never been paid for this time. Id. ¶ 6. The affidavit further contends that all workers employed in OSHA regulated areas are required to don, doff and shower regardless of the location in the plant where they perform their work activities and that, with the exception of those workers who drive to the Batteries, all must walk to the plant from the locker rooms, regardless of which gate they enter from the street. Id. ¶¶ 10-11. McCormick's affidavit

5

is materially similar to Andrako's, except that McCormick dons, doffs and showers at the plant's Wabash locker room facility and estimates that his walk between the Battery and the locker room takes approximately 10-15 minutes each way, depending on the route. McCormick Aff. (Docket No.127, Ex. 2) ¶ 3.[2] Plaintiffs also cite to the Declaration of Plaintiffs attached to their brief in opposition to Defendant's prior summary judgment motion, in which all three Named Plaintiffs (Andrako, McCormick and Mark Bruce) aver that they work in OSHA-regulated areas, are required to wear protective gear at all times, and walk to and from the coke batteries from the locker rooms after donning and prior to doffing and showering. Docket No. 57, Ex. 3 (Declaration of Plaintiffs) ¶¶ 3, 6-7.

Defendant argues that the affidavits do not meet the evidentiary requirement under Section 216(b) because they are conclusory and self-serving and contain testimony solely about the affiants' own workdays. (Docket No. 188, at 2-3). Defendant contends that the affidavits offer no first-hand evidence from any other employees regarding how those employees arrive and depart from their workstations and that Plaintiffs have not submitted any declarations from any other employee from Battery B or any of the eleven other coke oven batteries at the plant. Id. at 3.

I disagree that Plaintiffs have failed to provide a sufficient factual basis on which a reasonable inference could be made at this stage that potential plaintiffs are similarly situated. Even if the information regarding other employees contained in the Named Plaintiffs' affidavits and/or declarations is not based on personal knowledge, other record evidence supports Plaintiffs' contention that the workers employed in OSHA regulated areas are required to don, doff and shower regardless of the location in the plant where they perform their work activities and that, with a few limited exceptions (for example, those workers who drive to the Batteries), all must walk to

---

[2] Plaintiffs also attach the Declaration of Robert Prah, the current president of the local union. See id. Ex. 3. Prah's declaration relates solely to the issue of lunch break pay and is not relevant to the question of whether the proposed potential opt-in plaintiffs are similarly-situated.

the plant from the locker rooms, regardless of which gate they enter from the street.

Among other things, Plaintiffs point to Defendant's own declarations from the Manager of Employee Relations for its Mon Valley Works, Preston Henderson, as support for their argument that the proposed potential plaintiffs are similarly situated. See Decl. Preston L. Henderson (Docket No. 52, App'x to Mot. Summ. J.); Additional Decl. of Preston L. Henderson (Docket No. 74). In particular Henderson, who specifically bases his declarations upon personal knowledge, acknowledges, inter alia, that employees in OSHA-regulated areas are required to don and doff certain protective clothing and that approximately half of the 1,250 union-represented employees at Clairton work within an OSHA "regulated area." Add'l Henderson Decl. ¶¶ 1, 9-12. Henderson further admits that bargaining unit employees who do not have driving passes walk into the plant through one of three gates and generally proceed to a locker room in the vicinity of the entrance (or the centrally-located women's locker room) where they change into their work clothes prior to walking to their various work locations. Id. ¶¶ 20-22.[3] Henderson's declarations are further evidence in support of permitting conditional certification.

Even more significantly, it is undisputed that U.S. Steel and the Union have a longstanding agreement, applicable to all represented employees working in regulated areas, that time spent walking to and from the locker rooms after donning and prior to doffing is not compensated. Indeed, U.S. Steel relied on this longstanding agreement as the crux of its prior motion for summary judgment. See Henderson Decl. (Ex. to Docket No. 52) ¶¶ 36-43 (describing, inter alia, the 1947 Supplemental Agreement that the Company would not pay for preliminary activities such as traveling, walking time, and changing clothes; the 2003 BLA; and the 2008 Letter Agreement

---

[3] Henderson estimates that as of April 2009, there were approximately 245 drive-in access permits issued to union-represented employees at Clairton. Add'l Henderson Decl. ¶ 19. Plaintiffs agree that individuals with driving privileges are not included within the class definition and thus would not be entitled to compensation in this lawsuit for periods when they had driving privileges. Pls.' Br. Supp. (Docket No. 127) at 4.

in which the Company and the Union expressly agreed "that starting in 1947, every national collective bargaining agreement or BLA negotiated by the Parties has included an agreement that the Company is not obligated to pay Employees for preparatory or closing activities which occur outside of their scheduled shift or away from their worksite . . . .").

Defendant's argument that Plaintiffs have failed to identify a common policy because the provisions set forth above are not a "U.S. Steel policy," but rather a part of the collective bargaining agreement is without merit. What is important at this stage is that, as a general rule, union-represented employees, including those in OSHA-regulated areas, are not compensated for the walking time at issue. The fact that the Union and the Company mutually agreed to such a practice in the applicable collective bargaining agreements, as opposed to a unilateral U.S. Steel policy, does not change the fact that the putative class members arguably were injured by a common policy of non-payment. It is further non-dispositive at this stage of the analysis that exceptions to the general rule may apply. See Def.'s Opp. Br. (Docket No. 188) at 4-5. Whether, as Defendant asserts, certain employees may sometimes walk back to the locker room prior to the scheduled end of their shifts, does not change the fact that walking time outside the scheduled shift is generally not compensated.

Finally, Defendant argues that Plaintiffs' claims are not suitable for collective action treatment because they will require highly individualized analyses with respect to the mode of travel to workstations, the amount of travel time, when employees begin and end their travel, and a "host of other variables." See Def.'s Opp. Br. at 5–7. I disagree. At this initial stage, there is no dispute that the practice of non-payment for walking time outside one's scheduled shift is commonly applied to all represented employees working in OSHA-regulated areas. Any variations, exceptions, or other factual dissimilarities are more appropriately evaluated in the second stage of class certification, after discovery is complete. See Kuznyetsov, 2009 WL 1515175, at *5.

For all of these reasons, I find that initial conditional certification is warranted.[4]

## II.    Notification

With regard to notification, Plaintiffs seek the following:

1)    Approval of proposed notice and opt-in consent forms;

2)    Notice and opt-in consent forms to be sent by Named Plaintiffs' counsel to potential opt-in plaintiffs by first class U.S. mail; and

3)    Approval of a proposed Questionnaire for mailing along with the Notice and Opt-In forms.[5]

The parties disagree as to whether Plaintiffs' notice proposals are proper and whether the content of the proposed notices is objectionable. Defendant argues that Plaintiffs' proposed notice is defective because, inter alia: it implies that the Court is issuing or sponsoring the notice; the proposed time period is improper; and that numerous portions are repetitive and/or inaccurate. See Def.'s Br. Opp. at 9-13 (detailing objections). Defendant also objects to the proposed questionnaire ("Information Sheet") that the proposed notice invites individuals to complete and return to Plaintiffs' counsel because it exceeds the purpose of court-facilitated notice and lacks protections afforded parties under formal discovery rules. Id. at 11-12. Plaintiffs respond that their

---

[4] Defendant also notes in a two-paragraph section of its opposition brief that there is a controlling and dispositive legal issue as to whether the Named Plaintiffs have a viable FLSA claim. Def.'s Opp. Br., at 7-8. Specifically, Defendant argues that Plaintiffs' claim for additional compensatory work time fails because the time the Named Plaintiffs spend walking never exceeds their paid non-working meal periods. Id. at 7 & n.3 (arguing that the uninterrupted 30 to 35 minute daily meal periods do not constitute working time under Section 207(a) of the FLSA). Defendant indicates that it intends to file "promptly" a motion for summary judgment on this issue and requests that I refrain from ruling on the instant motion to proceed as a collective action until I rule on this issue of law. Id. At present, this "new" legal issue is inadequately briefed and must await resolution after a properly filed and supported motion for summary judgment. I decline, however, to forestall resolution of the motion to proceed as a collective action simply because another case-dispositive legal issue may exist. Resolution of this motion already has been postponed for over a year for various reasons, including Defendant's first motion for summary judgment on purported case-dispositive threshold issues (in which the current issue was not raised) and Defendant's motion for interlocutory appeal after its motion for summary judgment was denied in part. I disagree that postponing yet again my ruling on the Motion to Proceed will promote judicial efficiency under these circumstances.

[5] Copies of the proposed Notice, Opt-In Form, and Questionnaire are attached as Exs. 1-3 of Plaintiffs' Amended Motion. See Docket No. 126.

proposed notice is a "practically verbatim version" of the notices approved by me in <u>Kuznyetsov v. West Penn Allegheny Health System</u>, Civ. A. No. 09-379, 2009 WL 2145297 (W.D. Pa. July 15, 2009), and by Magistrate Judge Bissoon in <u>Camesi v. University of Pittsburgh Medical Center</u>, Civ. A. No. 09-85J, 2009 WL 1929873 (W.D. Pa. July 1, 2009), and thus Defendant's objections should be rejected.

Defendant suggests that, if, as here, I agree that notice should be sent, I order the parties to meet and confer regarding the form of notice to be used as an alternative to choosing between Plaintiffs' and Defendant's current proposed notices. Def.'s Opp. Br. at 8 n.4. In their Reply Brief, Plaintiffs indicate they would be amenable to such a discussion. Pls.' Reply Br. (Docket No. 190), at 2. Given the volume and nature of Defendant's objections, I find Defendant's request that I afford the parties the opportunity to develop and agree upon the contents of a notice to be approved by this Court to be reasonable. The parties also should meet and confer regarding the proposed Questionnaire. If the parties cannot agree upon the contents, the parties shall so inform the Court and shall cross-file their proposed notices (if those proposed notices differ from those already on record). Said submission must be filed within ten (10) days of the date of this order.

Finally, I agree with Defendant that a 120 day opt-in period is unreasonable. Def.'s Br. Opp. at 13. I find, however, that a sixty (60) day opt-in period is reasonable.

THEREFORE, Plaintiffs' Amended Motion to Proceed as a Collective Action and to Facilitate Notice Under 29 U.S.C. § 216(b) (Docket No. 126) is granted in part and denied in part as set forth above.

IT IS SO ORDERED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge

Dated: September 2, 2009